**In the Interest of T.L.C. Juvenile Officer, Respondent,**

v.

**T.L.C., Appellant.**

**No. WD 53419.**

Missouri Court of Appeals, Western District.

Aug. 19, 1997.

Madonna L. Limberg, Kansas City, for appellant.

Robert M. Schieber, Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

T.L.C., a juvenile, appeals from a judgment below finding him guilty of two counts of first degree assault. He claims that the Juvenile Officer failed to sustain his burden of proving each element of the offense beyond a reasonable doubt because the testimony of the only two witnesses was so internally contradictory on material issues that, under the doctrine of "destructive contradictions," their testimony was so incompetent that it was inadequate to sustain the charges. We disagree that the testimony of these two witnesses was so contradictory that it was robbed of all probative force, and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

T.L.C., a fifteen year-old male, was charged by the Juvenile Officer with two counts of first degree assault, a class B felony. See § 565.050, RSMo 1993. T.L.C. denied the charges and the case came to trial on July 30, 1996 in the Family Court Division of the Jackson County Circuit Court. The following evidence, considered in the light most favorable to the judgment, was presented at trial.

On April 27, 1996, Jeff Talbert hosted a barbeque to celebrate Andre White's birthday. Between ten and twenty-five people attended the barbecue. As the sun was setting, T.L.C. and two of his juvenile friends arrived at the party. Mr. Talbert, Andre White, and Andre's brother Darryl knew T.L.C. because he and his family lived down the street from Mr. Talbert.

T.L.C. twice attempted to obtain alcoholic drinks at the party, but spilled them both. At that point, Darryl White told T.L.C. to leave because he was intoxicated. T.L.C. refused, and a scuffle ensued as Darryl attempted to forcibly remove T.L.C. During their scuffle, both Darryl and T.L.C. fell off of the porch, with T.L.C. winding up on top of Darryl in the yard. Darryl later testified that he felt T.L.C. "going into his pocket" for something, and that T.L.C. then pulled out a gun and fired three shots, one of which grazed Darryl in the upper thigh. Darryl delivered three or four more blows to T.L.C.'s head and attempted to restrain T.L.C. until Darryl's leg started hurting. Darryl then fell to the side and T.L.C. got up and ran down the street to his family's house.

Andre White saw his brother and T.L.C. fall off of the porch together. He testified at trial that when he saw and heard T.L.C. fire three shots from a gun during the struggle, he ran inside and called the police and then came back outside. He testified that at that point he found that his brother was not seriously injured by the shots, so he and his brother left the Talbert property. They drove to their mother's house. Darryl's wife then called the police and asked them to come to the mother's house.

When the police arrived, Darryl showed them the grazing wound to his upper thigh. He turned over to the police his pants—with some bullet holes in them—and a bullet slug that came out of his sweatshirt. By that point, Andre realized that he had also been slightly grazed in the leg by one of the bullets T.L.C. fired. He testified at trial that he showed that graze wound to the police also. Neither Darryl nor Andre received medical attention. T.L.C., however, was taken to the hospital by ambulance and received stitches to close a cut on his head.

At trial, both Darryl and Andre testified, as did T.L.C.'s mother and one of T.L.C.'s friends who attended the party with him. The judge found the evidence sufficient to sustain both counts of assault. He committed T.L.C. to the custody of the Juvenile Officer, but suspended the execution of the commitment and placed T.L.C. on probation and in the custody of his mother.

## II. THE TESTIMONY IS NOT SO INCONSISTENT AND CONTRADICTORY THAT IT IS ROBBED OF ALL PROBATIVE FORCE

On appeal, T.L.C. argues that the court erred in sustaining the assault charges because Darryl and Andre's testimony was so internally contradictory on the material issues that it was incompetent and insufficient to support the allegations.

### A. Standard of Review.

 We review juvenile proceedings under the same standard as that applied in court-tried civil cases: we affirm the judgment unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *See Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *R.D. v. J.D.,* 842 S.W.2d 560, 561 (Mo.App.1992); *C.R.K. v. H.J.K.,* 672 S.W.2d 696, 698 (Mo. App.1984). In determining whether this standard has been met we consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all contrary inferences. *R.D.,* 842 S.W.2d at 561. We defer to the court below's determinations as to the credibility of witnesses and the weight to be given their testimony. *In re J.M.L.,* 917 S.W.2d 193, 196 (Mo.App.1996); *In re I.M.B.,* 897 S.W.2d 146, 149 (Mo.App.1995).

### B. The Evidence Supported the Conviction.

T.L.C. argues that the doctrine of "destructive testimony" or "destructive contradictions" applies in this case because Darryl and Andre White's trial testimony about what occurred was so diametrically inconsistent with their testimony about the actions they took after the alleged shootings that the testimony had no probative force and thus could not be relied on to support his conviction.

 The doctrine of "destructive contradictions" provides that a witness's testimony loses probative value when his or her statements at trial are so inconsistent, contradictory and diametrically opposed to one another that they rob the testimony of all probative force. *State v. Beckett,* 858 S.W.2d 856, 857 (Mo.App.1993); *State v. Eyman,* 828 S.W.2d 883, 887 (Mo.App.1992). The doctrine is limited in application. It only applies to the respective elements of a witness's trial testimony, and not to any contradictions between trial testimony and prior out-of-court statements. *State v. Rodney,* 760 S.W.2d 500, 503 (Mo.App.1988); *State v. Burns,* 671 S.W.2d 306, 311 (Mo.App.1984). Moreover, mere discrepancies or conflicts in the witness's trial testimony are insufficient to invoke the doctrine; rather, such inconsistencies in testimony simply create "questions for jury resolution." *Beckett,* 858 S.W.2d at 857 (quoting *State v. Newberry,* 605 S.W.2d 117, 121 (Mo.1980)). The doctrine is properly invoked only when the testimony is so "inherently incredible, self-destructive or opposed to known physical facts" on a vital point or element that reliance on the testimony is necessarily precluded. *Id.* (quoting *State v. Dupepe,* 241 S.W.2d 4, 7 (Mo.1951)); *State v. Washington,* 383 S.W.2d 518, 521 (Mo.1964).

T.L.C. argues that the doctrine applies here, because it defies logic to believe that Darryl White would continue to hit someone

who had a gun and was shooting at him. He also argues that it is incomprehensible that Andre White would have called the police and ambulance after his brother was shot and then leave the scene without waiting for them to arrive. Finally, he argues that the testimony of both brothers is inherently incredible because they allege that they were both shot, but neither sought medical attention and they did not present any evidence of their wounds at trial, such as expert medical evidence, pictures, or scars.

■ We do not agree. While the evidence provided a basis for T.L.C.'s counsel to argue that Darryl and Andre should not be found to be credible, it was not so internally inconsistent and contradictory that it was devoid of all probative force or value. In particular, we cannot say that it was inherently unbelievable that Darryl continued to fight with T.L.C. after T.L.C. had drawn a gun where, as here, the evidence also showed that: (1) they were struggling at close range; (2) Darryl had been hit by only one of the bullets and that shot just grazed him; (3) Darryl, at 6'4" tall and 250 lbs., was much bigger than T.L.C. and testified that he was trying to restrain T.L.C.; and (4) once the place where Darryl was shot began to hurt, he let T.L.C. go.

Similarly, the explanation which Andre offered for his actions was not so implausible as to rob his testimony of probative force. He explained that he and his brother left the scene even though he had called the police because he did not realize until after he made the call and went back outside that his brother was not hurt seriously. In light of this, and in light of the fact that his brother's assailant had only gone down the street, it was not incomprehensible or illogical for the brothers to decide to drive to their mother's house and wait for the police there.

■ Finally, the fact that the Juvenile Officer chose not to put on medical or physical evidence to bolster the brothers' testimony about their wounds did not render that testimony internally or inherently inconsistent or contradictory. Defense counsel was free to cross-examine the brothers about their wounds or to put on evidence contradicting their claims that they were shot. Any inconsistencies in their testimony just affected the weight and credibility of their testimony; it did not render the testimony so lacking in probative force as to permit T.L.C. to invoke the doctrine of "destructive contradictions." For these reasons we affirm the judgment below.

All concur.