**STATE of Missouri, Respondent,**

v.

**Jason BARNES, Appellant.**

**No. WD 55329.**

Missouri Court of Appeals,
Western District.

Submitted July 17, 1998.

Decided Nov. 3, 1998.

Christina L. Kime, Piedmont, for appellant.

Geoffrey W. Preckshot, Asst. Pros. Atty., Fulton, for respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

SMART, Judge.

On November 14, 1997, Jason Barnes was convicted of the Class A misdemeanors of assault in the third degree, § 565.070, RSMo 1994[1], and false imprisonment, § 565.130. Barnes was sentenced to concurrent terms of six months in the Callaway County jail. Barnes raises four points on appeal. First, he contends that the trial judge erred in failing to disqualify himself from hearing the case because of personal bias against the defendant's sexual conduct. He next contends that the trial court erred in convicting him of assault in the third degree because the victim suffered no physical injury as required by § 565.070. Barnes next maintains that the trial court erred in convicting him of the charges of assault in the third degree and false imprisonment because the victim's conflicting testimony was uncorroborated and insufficient to support the convictions. Finally, Barnes asserts that the trial court erred in convicting him of false imprisonment because the indictment did not include the date of the offense or the county in which the offense occurred and the failure to include such information prejudiced him.

Affirmed.

---

[1]. All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

### Factual Background

At trial, Barnes and the victim gave conflicting stories regarding the events which took place on July 17, 1997. On that day, the victim, Tammy Lee Moore, went to the home she had been sharing with Barnes for several months. Moore testified she arrived at approximately 3:00 in the afternoon to pick up some clothing because she was planning to leave Barnes. After Moore arrived, Barnes noticed a "hickey" on her neck and when asked about it, Moore told him it was from Barnes' step-brother, Timothy Hulsey. Moore then informed Barnes that she had been sexually intimate with Hulsey.

Moore testified that while she was in the closet gathering her clothing, Barnes picked her up and threw her on the couple's waterbed. He then got on top of her and demanded to know why she was leaving him. She managed to free herself enough to get from the bedroom to the bathroom where Barnes hit Moore's head against the shower stall. From the bathroom, the altercation moved to the living room where Barnes picked the victim up by placing a wraparound skirt around her neck. Moore testified that she was unable to breathe and was becoming faint when she managed to kick Barnes in the groin, causing Barnes to release her.

Moore testified that she attempted to leave many times and that Barnes "held [her] down" each time. Barnes finally agreed to let her go. Moore gathered some clothes and left. Once outside, she contacted the police.

Barnes testified that following the disclosure of Moore's relationship with his step-brother, he told Moore to pack her things and "go stay with him." He said he then began packing her things for her. He testified that at that point, Moore became hysterical and wanted to know where she was going to live. She began kicking and hitting him, at one point kicking him in the groin. Barnes restrained Moore, picked her up and carried her from the home. He then carried

her belongings from the residence, placing them in the front yard.

After a bench trial, Barnes was found guilty of the misdemeanors of assault in the third degree under § 565.070 and false imprisonment under § 565.130. Barnes raises four points on appeal.

### The Trial Judge's Comments

Barnes first contends that the trial judge erred in failing to disqualify himself because of his alleged personal bias against Barnes' conduct in living with the victim and having sexual relations outside of marriage. Immediately prior to convicting and sentencing Barnes, the trial judge made the following remarks:

> I would like to state for the record that I find the conduct of both parties to this case, both the Defendant and the prosecuting witness, absolutely horrible, disgusting. I can't say anything bad enough about it. I'm very sorry that the law makers of this state saw fit to take out of our statutes the old laws against lewd and lascivious cohabitation. I think they should still be there.

The trial court then went on to find Barnes guilty of both assault in the third degree and false imprisonment and sentenced Barnes to one-year prison terms on each count.

At the final disposition hearing on December 12, 1997, the judge commented that he "[was] not too impressed by the moral character of either [Barnes or Moore]." Barnes' counsel pointed out to the judge that it was "not uncommon" for young people to live together in this day and age, to which the judge replied, "Yeah. And I still don't believe in it." After hearing arguments from both sides, the judge then reduced Barnes' sentence to six months in the Callaway County jail on each count, to run concurrently.

Barnes asserts that the trial judge's remarks evidenced an attitude or disposition hostile to him and that such remarks precluded a fair hearing. Thus, Barnes believes that the trial judge should have disqualified

himself from hearing the case and his failure to do so resulted in reversible error.

Barnes relies on *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692 (Mo.App.1990), a dissolution matter, to support his contention that his rights were violated. In that case, in pretrial conference, with both counsel present, the judge and the attorneys discussed possible dispositions of the case. In those discussions, the judge indicated to the attorneys that he might employ the resolution used in his own dissolution matter. *Wesolich,* 794 S.W.2d at 694. Specifically, the judge proposed, that, as in the judge's case, Husband would retain custody of the children and remain in the family home until emancipation of the youngest child. At that time, Husband would pay to Wife her share of the value of the house in equal installments over a five-year period. *Id.* Wife presented a motion for a change of judge stating that the comments of the judge regarding his own dissolution evidenced prejudice and bias against her.[2] After argument by both attorneys, the judge denied the motion. *Id.*

The court found that the judge's comments regarding his own personal dissolution "not only pertained to matters which [were] highly personal in nature but also involved issues which [were] commonly perceived as emotionally laden." *Id* at 698. Additionally, the court found that "[a] reasonable person could have perceived the judge's statements not only as tantamount to comments on disputed matters in the present action but also as indicative of an alignment with one of the parties to the action." *Id.* Based on these findings, the court held that the judge should be prohibited from any further action on the case. *Id.* at 699.

### Recusal

■ The right to disqualify a judge is "one of the keystones of our legal administrative edifice." *State ex rel. Campbell v. Kohn,* 606 S.W.2d 399, 401 (Mo.App.1980). Missouri's Code of Judicial Conduct calls for a judge to recuse himself in a proceeding where the judge's impartiality could reasonably be called into question, including in-

---

**2.** While each party is afforded one change of judge as a matter of right under Rule 51.05, Wife's motion did not fall within the time constraints of the Rule.

stances where the judge "has a personal bias or prejudice concerning the proceeding." Rule 2, Code of Judicial Conduct, Canon 3(D)(1)(a). While it is presumed that a judge will not undertake to preside over a trial in which he could not be impartial, *State v. Lopez*, 898 S.W.2d 563, 567 (Mo.App.1995), if from the record a reasonable person could find a semblance of impropriety, Canon 3(D) requires recusal. *State. v. Nunley*, 923 S.W.2d 911, 918 (Mo. banc 1996).

■ The human mind is not a blank slate. *Wesolich*, 794 S.W.2d at 697. Judges are not required to rid themselves of moral values which may differ from those of the individual litigants. Views which are widely held in one generation may differ from those of a later generation, but judges are under no obligation to discard allegiance to norms which in their view have provided useful order and stability in society. The mere possession of views regarding the law or the conduct of the parties does not amount to prejudice. *Id.* "Prejudice" refers to a judge's attitude or disposition toward a party—either a "spirit of ill-will against one of the litigants," or a spirit of favoritism towards one of them which would tend to affect the court's resolution of the issues. *Id.* A judge should recuse himself only when the facts of the case show such a degree of prejudice as to suggest a fixed prejudgment and the preclusion of a fair weighing of the evidence. *Id.* at 698. Remarks made at the conclusion of a case, even those referring to the defendant in harsh, critical terms, do not evince bias when they are expressions of social outrage or concern. *Haynes v. State*, 937 S.W.2d 199, 201 (Mo. banc 1996).

Barnes' case is entirely distinguishable from *Wesolich*. In this case, there was nothing in the judge's comments which a reasonable person would have perceived as indicating that the judge had prejudged and closed his mind as to a disputed matter. The cohabitation and lifestyles of Barnes and Moore were not disputed. Nor would a reasonable person perceive the judge's comments as "indicative of alignment with one of the parties to the action." *Id.* at 698. The remarks reflected a personal opinion regarding social norms and a distaste for the conduct of the

defendant and the victim. While the remarks were gratuitous in the sense that they were not a necessary part of the analysis, there is no indication from the record that the judge's personal opinion precluded a fair weighing of the evidence. This court does not agree that the trial judge had any duty to recuse himself from the case. Point I is denied.

### Assault in the Third Degree—Physical Injury Requirement

■ Barnes next claims that the trial court erred in finding him guilty of assault in the third degree under § 565.070 because there was no evidence the victim suffered any physical injury as a result of the altercation. When reviewing the sufficiency of the evidence to support a verdict of guilty, this Court will consider all substantial evidence and reasonable inferences in the light most favorable to the verdict and will reject all contrary evidence and inferences. *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991). This Court will neither weigh the evidence, *Id.*, nor determine the credibility or reliability of the witnesses. *Id.* at 12. This Court's determination is limited to a determination of whether substantial evidence existed from which the trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

■ Barnes was charged with recklessly causing physical injury to Moore by striking and choking her. "[W]here the act constituting the crime is specified in the charge, the State is held to proof of that act...." *State v. Edsall*, 781 S.W.2d 561 (Mo.App.1989). Barnes relies on *Edsall* in claiming that his conviction must be reversed because there is no evidence of physical injury to Moore.

In *Edsall*, the defendant was charged with assault in the third degree under § 565.070. The information alleged that defendant Edsall caused physical injury to Deputy Sheriff Hopkins by hitting the sheriff with defendant's fists. *Id.* at 562. At trial, Sheriff Hopkins testified that he and the defendant "scuffled" in a hallway and he did not know whether the defendant "hit [him], shoved [him], or what." *Id.* All he knew was that his

feet flew off the floor and he landed on his back and shoulder on the concrete floor. *Id.* Sheriff Hopkins could not say for certain that the defendant hit him, causing the injury. *Id.* The trial court found the defendant guilty as charged. *Id.*

The appellate court reversed that decision finding that there was no evidence that the defendant struck Sheriff Hopkins with his fists as alleged in the information. *Id.* at 563. Specifically, the court found that any injury the sheriff sustained from the incident was from his fall to the floor. *Id.* "It is clear ... that there was no evidence that Hopkins was injured by any blows struck by [defendant]." *Id.*

*Edsall* is distinguishable from the case at hand. The information in this case alleged that Barnes "recklessly caused physical injury to Tammy Moore by striking her and choking her." Moore testified that Barnes struck her and choked her. The issue is whether Barnes' conduct caused any "physical injury" to Moore within the meaning of § 556.061(20).

"Physical injury" is defined in § 556.061(20) to mean "physical pain, illness, or any impairment of physical condition." Barnes argues that there was insufficient evidence of physical injury sustained by Moore, and therefore the verdict should be reversed.

At trial, Moore testified regarding the injuries she suffered:

Q. During the course of this exchange, what did he do specifically?

A. When—Whenever we went to the bathroom, he would hit my head against the shower stall. And—Well then, whenever I finally would make it to the living room, he picked me up with a—it was would pick me up off the floor and I—I was choking.

Q. What did that cause you to do?

A. Well, I almost—I almost fainted, but I—

Q. Could you breathe?

A. No.

. . .

Q. Did you get any kind of injuries, no matter what kind, out of this?

A. When I was in the closet—Whenever he hit my head on the corner or the dresser, I just hurt my head a little bit. And then on my—On the right side of my neck I got some just little scrapes from the skirt, a few marks on the arms.

. . .

Q. Okay. But physically there really was no injury; isn't that correct?

A. Yeah. He was a brute. He hit me with his hands. He choked me.

Q. Okay. But again, I'm asking you about injury. I mean, someone can hit you without actually causing physical injury. And I think you've indicated that there is no—

A. No. Just a few—

Q. —that the injury is emotional.

A. Just a few aches and pains.

The State then called Officer Scott Hamby to the stand. Officer Hamby testified that when the victim came into the police station, "[s]he had red markings on various places on her body." Officer Hamby agreed, after viewing photographs taken of the victim on the date of the incident, that there were "scratches up under the right side of [the victim's] chin" consistent with being choked by a net-like wrap-around skirt.

Moore testified as to physical pain—"I hurt my head"; "a few aches and pains." Moore's testimony also evidenced impairment of her physical condition. She stated she could not breathe and "almost fainted" when Barnes was choking her. Section 556.061(20) does not require that physical injury be substantial, merely that it be present. This Court finds that there was evidence that Moore received scratches, red marks, aches and pains, and that Barnes choked her in such a way as to partially occlude her airway, making it difficult to breathe. The trial court could reasonably have found the defendant caused physical injury within the meaning of § 556.061(20). Point II is denied.

### Conflicting Testimony

■ Barnes next asserts that the trial court erred in convicting him of assault in the

third degree, § 565.070, and false imprisonment, § 565.130, because the victim's testimony was uncorroborated, contradictory and conflicts with the physical facts, surrounding circumstances and common experiences. He claims that Moore's testimony was unconvincing and insufficient to support his conviction. Our review of Barnes' third point is performed under the same standard as Point II.

Barnes relies solely on *State v. Kuzma*, 751 S.W.2d 54 (Mo.App.1987), in arguing that Moore's testimony should have been corroborated. In *Kuzma*, the defendant was convicted of sodomy and first degree sexual abuse. *Id.* at 55. At trial, the defendant's six-year-old step-daughter testified that the defendant had molested her but on cross-examination admitted that her natural father had molested her. *Id.* At a deposition ten days before the trial, the little girl was not able to remember which parts of her body the defendant had allegedly touched and gave information contrary to that given on direct examination regarding the number of times the molestation occurred and the place of the incident. *Id.* at 55–56. She admitted needing her family's help to remember details about the events because she was unable to recall them by herself. *Id.* at 56. A physical examination of the girl shortly after the incident found only an "unexplained redness" on her legs. *Id.* at 57. The defendant's eight-year-old step-son testified that the defendant had also molested him, but like his sister, the boy gave conflicting accounts of the alleged incident. *Id.* at 56.

In the case at hand, Moore's various recollections of the event held some seeming inconsistencies. For example, Moore told Officer Hamby she kicked Barnes in the groin when she was in the closet. At trial, she testified that she kicked Barnes when they were in the living room as he was choking her. At trial, Moore first testified that Barnes hit her head on the shower stall. Later she testified that he hit her head on the corner of a dresser. Finally, Moore testified that Barnes held her without her consent but when he did allow her to leave, she took her time gathering her clothing before leaving.

The corroboration rule the defendant relies upon is triggered where the victim's testimony is "so contradictory and in conflict with physical facts, surrounding circumstances, and common experience, that its validity is thereby rendered doubtful." *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981). Corroborating evidence is not required because the victim's testimony cannot stand alone, but rather because the victim's testimony leaves the court unconvinced and doubtful of the defendant's guilt. *State v. Smith*, 679 S.W.2d 899, 902–03 (Mo.App. 1984). The rule does not apply where the conflicting or inconsistent testimony bears on a non-essential element of the case. *Kuzma*, 751 S.W.2d at 58.

Traditionally, the "corroboration rule" traditionally has been applied exclusively in cases involving sexual offenses. *State v. Goodale*, 210 Mo. 275, 109 S.W. 9, 11 (Mo. 1908); see *State v. Nelson*, 818 S.W.2d 285 (Mo.App.1991). We decline to extend the rule to the charges in this case. We also fail to see how any of the inconsistencies in Moore's testimony bear on an essential element of the case. While they affect how and where Moore was injured, they do not preclude the possibility that a reasonable fact finder could find Barnes guilty beyond a reasonable doubt. The determination of a witness' credibility and the effects of conflicting or inconsistent testimony are for the trier of fact. *Hewitt v. City of Kansas City*, 781 S.W.2d 125, 127 (Mo.App.1989). The trial court assessed Moore's testimony, heard Officer Hamby's testimony regarding her injuries after the incident and saw photographs taken of Moore shortly after the incident depicting fresh bruises and scratches. The trial court was in a superior position to judge Moore's credibility, and we will not disturb that finding. Point III is denied.

### Sufficiency of Indictment for False Imprisonment

Finally, Barnes contends that the trial court erred in convicting him of false imprisonment, § 565.130, because the information alleging that charge contained neither the date when that offense occurred nor the county in which that offense occurred. On

appeal, the issue of insufficiency of an indictment may be raised for the first time. *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992). Upon review, this Court must determine whether the indictment is so defective that "(1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." *Id.*

The information on which Barnes was charged was as follows:

Robert R. Sterner, on his official oath as the Prosecuting Attorney of the County of Callaway, State of Missouri, charges that: Count I: the defendant, in violation of Section 565.070, RSMo, committed the class A misdemeanor of assault in the third degree, punishable upon conviction under Sections 558.011 and 560.016, RSMo, in that on or about the 17th day of July, 1997, in the County of Callaway, State of Missouri, the defendant recklessly caused physical injury to Tammy Moore by striking her and choking her, and

Count II: the defendant, in violation of Section 565.130, RSMo, committed the class A misdemeanor of false imprisonment, punishable under Sections 558.011.1(5) and 560.016, RSMo, in that defendant knowingly restrained Tammy Moore unlawfully and without her consent so as to interfere substantially with her liberty, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state of Missouri.

Rule 23.01(b)(3) states that the indictment shall include "the time and place of the offense charged as definitely as can be done." Rule 23.01(b)(3). However, § 545.030 states that no indictment shall fail for "omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense." § 545.030.1(5), RSMo 1994. Neither shall any indictment fail "[f]or want of any venue at all," § 545.030.1(9), RSMo 1994, nor for any defect which does not tend to prejudice the defendant's substantial rights upon the merits. § 545.030.1(18), RSMo 1994.

Barnes' indictment included all of the elements of false imprisonment, § 565.130: 1) the knowing restraint; 2) of another; 3) unlawfully or without consent; 4) which interferes substantially with another's liberty. The time of the event constituting false imprisonment is not essential to that offense. Therefore, under § 545.030.1(5), the State's failure to include the date of the offense is not fatal to the validity of the indictment. Similarly, under § 545.030.1(9), the State's failure to include the location of the offense is not fatal to the validity of the indictment. Even if this Court were to assume that the date and location of the offense were material to the offense, § 545.030.1(11) precludes the invalidation of the information in question. That section states that no indictment will be deemed invalid "[f]or the want of an allegation of the time or place of any material fact, when the time and place have once been stated in the indictment." § 545.030(11), RSMo 1994.

Barnes argues that the State's failure to include the date of the false imprisonment significantly prejudices his ability to plead former jeopardy in the event of a subsequent prosecution for the same offense. Barnes insists that because Moore lived with Barnes for some time and stated that such incidents had occurred before, the State's omission of the offense date prejudices his rights to be free from double jeopardy regarding other potential prosecutions for false imprisonment. Barnes also contends that such omission also prejudices his right to defend against the specific crime with which he was charged.

This Court finds no evidence of Barnes' claimed prejudice regarding his right to defend against the specific crime charged. Count I of the **same** indictment alleged both a date (July 17) and a location (Callaway County, Missouri). There is no evidence in the record that Barnes did not know for which of the recurring "incidents" he was being prosecuted. In fact, at trial Barnes' attorney addressed Barnes' restraint of Moore on July 17 when cross-examining Moore. The fact that Barnes' attorney questioned him regarding the false imprisonment

and Barnes denied the offense, convinces this Court that Barnes was in fact capable of raising a defense to the charge of false imprisonment. We find no prejudice in that respect.

■ Furthermore, this Court does not believe that in the event Barnes is prosecuted for another incident of false imprisonment involving Moore, he will be prejudiced by the omission of the date from the indictment in the case at hand. If Barnes should be charged with the false imprisonment of Moore in the future, the court determining that matter may consider the entire record, including parol evidence, in determining the validity of a plea based upon double jeopardy. *State v. Trimble,* 654 S.W.2d 245, 259 (Mo.App.1983). The record in the case at hand includes the information alleging the false imprisonment of Moore; the trial testimony regarding the offense occurring on July 17, 1997; and this appeal in which the State has argued that the false imprisonment offense occurred on July 17, 1997. We conclude that Barnes' right to be free from double jeopardy regarding the July 17, 1997 false imprisonment of Moore is well protected. Point IV is denied.

Judgment is affirmed.

ELLIS and HOWARD, JJ., concur.