**STATE of Missouri, Respondent,**

v.

**Charles D. COLE, Appellant.**

No. 26107.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 17, 2004.

Nancy A. McKerrow, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Appellant, Charles D. Cole ("Defendant"), was convicted by a Greene County jury of domestic assault in the second degree, § 565.073, RSMo 2000;[1] armed criminal action, § 571.015 RSMo; and leaving the scene of a motor vehicle accident, § 577.060 RSMo. In its judgment the trial court sentenced Defendant, *inter alia,* to seven years imprisonment for the conviction of domestic assault in the second degree; ten years' imprisonment for the conviction of the unclassified charge of armed criminal action, to run concurrent with the conviction for domestic assault in the second degree; and three years imprisonment for the conviction of leaving the scene of the accident running consecutively to the concurrent terms of imprisonment.

Defendant raises two points on appeal. In his first point, Defendant contends the

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

trial court erred in overruling a portion of his motion to suppress Exhibit 10 in violation of his Constitutional right against incriminating himself. In his second point, Defendant posits trial court error in accepting the jury's verdict of guilty to the charge of domestic assault in the second degree, in that the State failed to prove every element of the offense. We affirm.

### FACTS

■ We review the evidence and all reasonable inferences in a light most favorable to the verdict and will disregard any evidence and inferences to the contrary. *State v. Dewitt,* 924 S.W.2d 568, 570 (Mo. App.1996). Defendant and Nancy Ann Cole ("Victim") were married for 27 years at the time of the incident, but had been separated for approximately a year and a half. On November 15, 2002, Victim left work around 5:30 p.m. after her shift at a uniform dry cleaning facility located on Bolivar Road in Springfield. She was driving a 1986 Nissan. Heading home, Victim turned south onto Kansas Expressway then made a right turn onto Chestnut Expressway. Defendant pulled along side Victim in a black, half-ton flatbed pickup truck and began angrily "mouthing" at her, indicating that he wanted her to stop so they could talk. Victim was afraid of Defendant. Rather than stopping, she pulled ahead of him and changed lanes, thereby placing her vehicle in front of Defendant's vehicle.

Both vehicles proceeded west for a few minutes and Victim pulled into the parking lot of Dollar General Store on Chestnut Expressway, near West Bypass. Not wanting to talk with Defendant, she turned her car around and headed back east on Chestnut Expressway toward Glenn Street. Defendant tailgated her as she continued east on Chestnut Expressway. Victim turned south on Glenn Street with Defendant in pursuit. When Victim reached the corner of Glenn and Elm Streets, Defendant rammed her car from behind. Victim's vehicle was hit with enough force that she was unable to turn onto Elm Street, where her house is located, so she continued south on Glenn Street. Defendant hit the Nissan once again after Victim turned left onto Lincoln Street. After the second hit, Victim continued toward Mt. Vernon Street, circling around to try to reach her house. Victim then turned right on Mt. Vernon Street, heading west back to Glenn Street. At Glenn Street, Victim was turning right when Defendant struck her car in the right rear quarter panel with enough force to spin the car around, crashing it into a blue Ford pickup truck located on Glenn Street. No skid marks were found at the scene of the accident.

The owner of the blue truck, Martin Gartrell, jumped out of his vehicle to survey the damage and to aid Victim who was trapped in her car and screaming hysterically. He observed the black truck stop briefly then drive away.

Defendant sped past Richard Kessinger, who had seen the collision in his rear view mirror. Mr. Kessinger then chased Defendant in order to obtain the license plate number of his vehicle. Mr. Kessinger lost sight of the truck briefly as he slowed to nearer the speed limit, but was able to see the truck turn right off of Mt. Vernon Street onto West Bypass, and then turn right onto Chestnut Expressway. As Mr. Kessinger followed the truck's route, he came to Hickman Tires where he found the truck abandoned. He saw Defendant standing in the middle of a side street near the truck, and when Mr. Kessinger approached, Defendant ran. Mr. Kessinger returned to the scene of the accident and gave the license number and location of the truck to the police. Mr. Kessinger,

Mr. Gartrell, and a neighbor who witnessed the second collision, all testified at trial.

When the police investigated the truck left at Hickman Tires, the officer noted damage on the front bumper, found an envelope with Defendant's name on it inside the truck, and determined the truck belonged to Defendant. An arrest warrant was issued and Defendant was arrested three days later.[2]

Defendant was found guilty of domestic assault in the second degree, armed criminal action and leaving the scene of an accident. He was sentenced in accordance with the jury's recommendations as previously set out. This appeal follows.

## DISCUSSION AND ANALYSIS

### Point I

■ In his first point, Defendant contends the trial court erred in overruling part of his motion to suppress a videotape containing Defendant's statements to a detective. Defendant claims his Constitutional rights were violated because the detective interrogated Defendant without advising him of his right to remain silent, and that the statements made in the videotape by Defendant were not spontaneous but, rather, were a reply to a question by the detective designed to elicit a response.

■ Appellate review of a trial court's ruling on a motion to suppress is limited to a determination of whether the evidence was sufficient to support the finding. *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). This Court will view the evidence in a light most favorable to the judgment and will reverse the judgment only if clearly erroneous. *Id.* The Court will consider all evidence presented at trial, including evidence presented at a pretrial hearing. *Id.*

After Defendant was arrested and brought in to the Greene County jail for questioning, Detective Steve Haefling ("Haefling") took Defendant into an interview room and told Defendant that he wanted to "talk to [him] about this deal that happened on the fifteenth." Defendant tersely replied, "I ain't gonna say." This brief exchange occurred before Haefling was able to read Defendant his *Miranda*[3] warnings. As we view the record, Haefling then sought to clarify Defendant's response, to insure that Defendant was truly invoking his right to remain silent, by asking "Why is that?" Rather than answering directly, Defendant blurted out a few statements that implied that he was the one driving the black truck the day of the incident.[4]

Haefling then made several comments about the facts, trying to elicit information from Defendant about the incident.[5] Defendant then clearly invoked his *Miranda* rights by stating: "I ain't got anything—unless I got a lawyer present, I ain't got nothing to say." The attempted interview stopped at that point.

2. Additional facts pertaining to Defendant's points on appeal will be discussed during our analysis of the law and facts.

3. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. His reply was, "I just ain't. I don't know anything about it. The old truck quit on me; it been running out of gas. I left it on the side of the fucking road. I was disgusted with that thing; I fooled with it two dates [days?]."

5. Haefling stated: "I know you left it over at Hickman Tire—and you took off on foot. I know that. I also know you rammed the back of your wife's car a couple of times and run her off the road in[to] another vehicle."

At the conclusion of the motion to suppress hearing, the trial court ruled that the jury could hear the first portion of the interview, because Defendant's statements were made spontaneously after Haefling's clarifying question, and that the remaining portion of the taped statement should be excluded from evidence.[6]

As Defendant was clearly in custody when the interview began, Haefling was required to read Defendant his *Miranda* rights before questioning him. *See State v. Nunnery,* 129 S.W.3d 13, 17 (Mo.App. 2004); *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. 1602. As we view the record, it was Haefling's intention to read Defendant his *Miranda* rights but Defendant stated, "I ain't gonna say," before Haefling had a chance to do so. Under the law, Haefling was permitted to ask a clarifying question of Defendant to be sure Defendant was indeed invoking his right to remain silent. *See State v. Clemons,* 946 S.W.2d 206, 219 (Mo. banc 1997) (overturned on other grounds by *Clemons v. Luebbers,* 381 F.3d 744 (8th Cir., 2004)). "In such instances, the interviewer may clarify the defendant's intent by continued questioning as to whether or not the defendant does or does not waive his rights." *Id.* Any statements Defendant made in response to Haefling's clarifying question

was a spontaneous admission, not the result of police "interrogation" in violation of *Miranda,* and therefore admissible. *See State v. Reese,* 26 S.W.3d 323, 325 (Mo. App.2000) (where police explained the purpose of the questioning and suspect confessed before *Miranda* rights were given, the court held that her admission was spontaneously given and not a result of police pressure). Point I is denied.

## Point II

■ In his second point on appeal, Defendant contends the trial court erred in accepting the jury's verdict of guilty as to the charge of domestic assault in the second degree, proscribed by section 565.073, in that the State failed to prove every element of the offense, more specifically that Defendant knowingly caused any kind of criminally recognizable physical injury to Victim.[7]

■ When determining the sufficiency of the evidence in a criminal conviction, we defer to the trier of fact, in this case the jury. *State v. Wright,* 998 S.W.2d 78, 81 (Mo.App.1999). The standard of review is whether there is ample evidence from which a reasonable juror could have found defendant guilty beyond a reasonable doubt. *Id.* The court must examine the

---

**6.** The edited tape, Exhibit 11, was entered into evidence at trial. Exhibit 10 was not admitted.

**7.** Section 565.073 sets out, in pertinent part, that:

 1. A person commits the crime of domestic assault in the second degree if the act involves a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor, as defined in section 455.010 [the Adult Abuse definition for Chapter 455], RSMo, and he or she:

 (1) Attempts to cause or knowingly causes physical injury to such family or household member by any means, including

but not limited to, by use of a deadly weapon or dangerous instrument, or by choking or strangulation; ....

Section 562.016.3 sets out:

 A person 'acts knowingly,' or with knowledge,

 (1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

 (2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

Section 556.061(20) defines "**physical injury**" to mean "physical pain, illness, or any impairment of physical condition."

elements of the crime and consider each in turn; *reviewing the evidence in the light most favorable to the judgment, disregarding any contrary evidence, and granting the State all reasonable inferences from the evidence. State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001) (quoting *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993)). We defer to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony. *State v. Nichols,* 20 S.W.3d 594, 597 (Mo.App.2000).

Defendant contends Victim's physical injuries were insufficient to satisfy the requirements of § 556.061(20) which defines physical injury in the context of domestic assault in the second degree. *See* § 565.073.1(1).

There is very little case law that discusses what constitutes "physical injury" for the purposes of § 556.061(20). In *State v. McGuire,* 924 S.W.2d 38, 40 (Mo.App.1996) the court determined that when defendant poked an officer in the chest with his finger, and did not "hit, kick, push, or swing at the officer," the contact was not an "immediate physical injury," *id.* 39–40, in the context of a charge of committing the crime of assault of a law enforcement officer in the third degree. *See* § 565.083.1(3), RSMo 1994. However, in *State v. Barnes,* 980 S.W.2d 314, 319 (Mo. App.1998), when the victim summarized her injuries[8] as "Just a few aches and pains," the court concluded the trial court could have reasonably found that the defendant had caused "physical injury" within the meaning of section 556.061(20). Indeed, the Court stated that "[s]ection 556.061(20) does not require that physical injury be substantial, merely that it be present." *Id.*

At trial, Victim testified about the extent of her injuries after she was rammed by Defendant's vehicle the third time.[9] When asked if she had sustained any injuries, she answered, "Yes, I did." In response to a question as to what exactly the injuries consisted of, she replied, "From being tense, my body. My body ached, and I must have hit my nose up on the side glass because my nose was swollen." On cross examination, Victim stated that she told people at the scene that she did not require medical treatment and did not seek any treatment after the incident.

Here, the jury must have determined that Victim's body aches and swollen nose were sufficient enough injuries to constitute "physical injuries" as described by section 556.061(20). We do not quarrel with the jury's determination in the context of the facts of this case. This does not end our analysis, however.

Defendant also contends there was insufficient evidence of "physical injury," as defined by section 556.061(20), because Victim's statements as to physical injuries she suffered were so inconsistent with each other that her testimony lost its probative value and under the doctrine of "destructive contradiction" could not be considered. Defendant asserts that while in one statement Victim related that after Defendant hit her vehicle the final time, her body ached and she "must have hit [her] nose ... because [it] was swollen," Victim also confirmed that she had declined medical treatment because she was not injured; and that she had not sought

---

8. She also testified to being hit, choked and receiving scrapes to the neck.

9. In this context, Defendant's vehicle was a dangerous instrument. *See* § 556.061(9);

"[t]o determine whether an object is a dangerous instrument we must look to its use under the circumstances." *State v. Jackson,* 865 S.W.2d 678, 680 (Mo.App.1993).

medical treatment because she was not injured.

■■■■ We note that the doctrine of "destructive contradictions" is "properly invoked only when the testimony is so 'inherently incredible, self-destructive or opposed to known physical facts' on a vital point or element that reliance on the testimony is necessarily precluded." *Wright,* 998 S.W.2d 78 at 81 (quoting *T.L.C. v. T.L.C.* 950 S.W.2d 293, 295 (Mo.App.1997)). "The doctrine specifically does not apply to contradictions between the victim's trial testimony and prior out-of-court statements, to contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive." *Id.* Additionally, it does not apply "where the inconsistencies are between the victim's statements and those of other witnesses; the latter types of inconsistencies in testimony simply create questions of credibility for jury resolution." *Id.*

Here, however, the jury could have reasonably concluded that Victim could have been physically injured to the point where she experienced pain, although she did not require medical attention. "Physical pain," alone, meets the definition of "physical injury" under section 556.061(20). Point II is denied.

The judgment is affirmed.

PARRISH, P.J., and BATES, C.J., concur.