

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

IN THE INTEREST OF: D.L.T.

)  No. ED110966
)
)  Appeal from the Circuit Court of
)  the City of St. Louis
)
)  Honorable Barbara T. Peebles
)
)
)  Filed: August 15, 2023

**Introduction**

D.L.T. ("Juvenile") appeals the judgments of jurisdiction and disposition of the Juvenile Division of the Circuit Court of the City of St. Louis finding Juvenile committed, if he were an adult, resisting arrest and second-degree tampering. Juvenile raises two points on appeal. In Point I, Juvenile argues there is no substantial evidence he committed second-degree tampering. In Point II, Juvenile argues there is no substantial evidence he committed the offense of resisting or interfering with an arrest, detention, or stop.[1]

Because substantial evidence supports the juvenile court's finding Juvenile committed second-degree tampering, we deny Point I. Because substantial evidence supports the juvenile court's finding Juvenile resisted arrest, we deny Point II.

We affirm.

---

[1] We refer to this offense as "resisting arrest."

## Factual and Procedural History

In October 2021,[2] Victim reported his 2017 Mazda stolen from his residence in St. Louis County. Early in the morning, Victim heard the car taken from his garage and he saw cars filled with juveniles outside.

In the early morning of November 4, 2021, Officer Joseph Dawkins of the City of St. Louis Metropolitan Police Department was off duty in his home in Maryland Heights. On his Ring camera, Officer Dawkins saw an individual in light jeans and a dark sweatshirt enter his driveway and attempt to enter his marked police car. The individual left in a dark sedan and Officer Dawkins called the Maryland Heights Police Department. Several Maryland Heights police officers were sent to the neighborhood. Officer Dawkins left in his personal Jeep and found the dark sedan, which sped away when he turned to approach it. Officer Dawkins followed the sedan and eventually encountered Maryland Heights police, who turned directly behind the sedan and activated their sirens. Officer Dawkins went home.

Sergeant Clifford House and Corporal Kevin Devine of the Maryland Heights Police Department were together in a patrol car when they responded. They activated their sirens behind the sedan, but the car sped through a stop sign and did not slow down. During the chase, Maryland Heights police officer Alex Waldroup placed a spike strip in the road. The sedan drove over the spike strip and onto Interstate 270 with a flat tire.

The sedan quickly drove off the interstate onto an embankment. Juvenile exited the passenger side, ran up the embankment, and jumped over a fence. Juvenile was wearing light jeans and a sweatshirt. The sedan crossed the highway before stopping at a barrier. Officers Devine and Matthew Fray went to the sedan and found three passengers and an empty driver

---

[2] Both parties cite Victim's testimony his car was stolen "[w]hatever day I filed the police report. October something in '21."

seat. Officers House and Waldrop followed Juvenile with Bax, Officer Waldroup's canine. The canine chased Juvenile and found him hiding in the woods. Juvenile was arrested. The dark sedan was identified later as Victim's 2017 Mazda.

On February 23, 2022, the Juvenile Officer for the Twenty-Second Judicial Circuit filed its petition in the juvenile court. On July 25, 2022, the Juvenile Officer filed its second amended petition, alleging on November 4, 2021, Juvenile operated Victim's Mazda without consent, which, if committed by an adult, constituted first-degree tampering, a class D felony under section 569.080, RSMo Cum. Supp. 2017. The amended petition alternatively alleged Juvenile rode in the Mazda without consent, constituting second-degree tampering, a class A misdemeanor under section 569.090, RSMo Cum. Supp. 2017.

The amended petition further alleged on November 4, 2021, Juvenile resisted arrest for a felony offense or resisted arrest in a manner creating a substantial risk of injury to others, either of which, if committed by an adult, constituted a class E felony under section 575.150, RSMo Cum. Supp. 2017. The amended petition alternatively alleged Juvenile resisted arrest, an offense, which, if committed by an adult, constituted a class A misdemeanor under section 575.150. The Juvenile Officer requested adjudication under section 211.031.1(3), RSMo Cum. Supp. 2021.

On August 8, 2022, the juvenile court held a hearing. Juvenile testified he was visiting a friend in the early morning hours of November 4, 2022, when her father made him leave. Juvenile testified he called another friend to pick him up, and Juvenile got in the back seat. Officer Dawkins testified he saw an individual attempt to enter his marked police car, then get into a dark sedan. Officer Dawkins also testified he saw the dark sedan behaving suspiciously and consistent with recent thefts in the area. When he followed the dark sedan, it tried to evade him. Officer Waldroup testified he saw the dark sedan pursued by police cars with their sirens on

3

and he placed a spike strip that flattened the sedan's front right tire. Then, he helped pursue the car onto the interstate. Sergeant House testified he saw someone throw a firearm from the passenger side of the car before it left the interstate. Sergeant House testified he saw someone climb out of the driver seat and out the passenger door. Officer Waldroup testified he saw Juvenile exit the passenger door and he chased Juvenile until his canine found him hiding in the woods. Officer Waldroup testified Sergeant House placed Juvenile in handcuffs.

On August 8, 2022, after the hearing, the juvenile court issued two judgments. First, the juvenile court issued an order and judgment of jurisdiction, finding it had jurisdiction over the Juvenile and the Juvenile Officer established beyond a reasonable doubt he committed second-degree tampering and resisting arrest, both class A misdemeanors. The juvenile court dismissed the felony charges. Second, the juvenile court issued an order and judgment of disposition. The juvenile court placed juvenile in his mother's custody subject to court supervision and GPS monitoring. The juvenile court ordered Juvenile to complete forty hours of community service and observe specified restrictions.

This appeal follows.

## Standard of Review

Juvenile proceedings are reviewed "in the same manner as other court-tried cases." *D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 786 (Mo. banc 2019) (quoting *C.G.M., II v. Juv. Officer*, 258 S.W.3d 879, 882 (Mo. App. W.D. 2008)). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re A.G.R.*, 359 S.W.3d 103, 108 (Mo. App. W.D. 2011) (citing *In the Interest of T.L.C.*, 950 S.W.2d 293, 295 (Mo. App. W.D. 1997)). Substantial evidence is evidence that, if believed, has some probative force on each fact necessary to sustain

the court's judgment. *L.S.H. v. C.H.*, 652 S.W.3d 408, 413 (Mo. App. W.D. 2022) (citing *England v. England*, 454 S.W.3d 912, 917 (Mo. App. W.D. 2015)).

In determining whether this standard has been met, we view the evidence in the light most favorable to the judgment, and we disregard all contrary inferences. *A.G.R.*, 359 S.W.3d at 108 (citing *T.L.C.*, 950 S.W.2d at 295). We ignore evidence contrary to the trial court's ruling. *L.S.H.*, 652 S.W.3d at 413 (citing *Interest of Z.N.O. v. R.O.*, 566 S.W.3d 609, 615 (Mo. App. W.D. 2018)). The credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, "which is free to believe none, part, or all of their testimony." *D.C.M.*, 578 S.W.3d at 786 (quoting *C.L.B. v. Juv. Officer*, 22 S.W.3d 233, 236 (Mo. App. W.D. 2000)).

**Discussion**

*Point I: Tampering*

*Party Positions*

In Point I, Juvenile argues the juvenile court's judgments of jurisdiction and disposition are not supported by substantial evidence he committed second-degree tampering. Juvenile argues he did not have the requisite culpable mental state because he did not know he was in another person's car without consent. Juvenile argues, when police asked who owned the vehicle, he responded he was "not 100 percent sure," and others "were supposed to be picking me up and taking me somewhere." Juvenile cites his testimony he was only in the car because his friends gave him a ride home.

Juvenile cites section 569.090.1(2), which provides a person commits second-degree tampering if he "[u]nlawfully rides in or upon another's automobile." Because this section does not provide a culpable mental state, Juvenile argues the offense must be "purposely or

5

knowingly" under section 562.021.3.[3] Juvenile cites section 562.016, RSMo Cum. Supp. 2017, which defines culpable mental states. Juvenile explains a person acts purposely "when it is his or her conscious object to engage in that conduct or to cause that result." § 562.016.2. A person acts knowingly regarding his conduct or attendant circumstances when he is aware of "the nature of his or her conduct or that those circumstances exist," and he acts knowingly regarding a result of his conduct when he is aware his conduct "is practically certain to cause that result." § 562.016.3(1)–(2). Juvenile argues recklessness—"consciously disregard[ing] a substantial and unjustifiable risk" constituting a gross deviation from the standard of care—is insufficient under section 569.090.1(2). § 562.016.4.

Juvenile notes intent "usually is not susceptible of direct proof, but may be, and generally is, established by circumstantial evidence." *In Interest of V.L.P.*, 947 S.W.2d 546, 547 (Mo. App. W.D. 1997) (quoting *State v. Costello*, 546 S.W.2d 22, 23 (Mo. App. E.D. 1976)). Juvenile also notes his mental state may be determined from evidence of his conduct before the act, from the act itself, and from his subsequent conduct. *T.R.T. v. Juv. Officer*, 641 S.W.3d 263, 270–71 (Mo. App. W.D. 2021) (citing *State v. Davidson*, 521 S.W.3d 637, 644 (Mo. App. W.D. 2017)), *reh'g and/or transfer denied* (Feb. 1, 2022), *transfer denied* (Apr. 5, 2022).

Still, Juvenile argues an "inference of guilt requires more than simple presence in a stolen automobile." *V.L.P.*, 947 S.W.2d at 547. Juvenile cites *State v. Randle*, affirming a tampering conviction where "the defendant was operating the stolen vehicle less than two weeks after it was reported stolen, had exclusive possession of the vehicle and keys, and provided no explanation other than that he rented it from the owner, the latter of which was refuted by the owner." 456 S.W.3d 535, 540–41 (Mo. App. W.D. 2015). Juvenile cites cases where additional evidence supported the conclusion the occupant in a stolen vehicle knew it was stolen. *State v.*

---

[3] All statutory references are to RSMo 2016, unless otherwise indicated.

*Goodman*, 531 S.W.2d 777, 778 (Mo. App. W.D. 1975) ("the ignition was punched out, with wires hanging under the dashboard"); *State v. Crawley*, 478 S.W.2d 344, 345 (Mo. 1972) (stolen license plates); *Costello*, 546 S.W.2d at 23 (car was painted black and door lock was punched out).

Juvenile agrees he fled in a stolen vehicle and ran from police, but notes no keys or stolen property were found on his person. Juvenile notes Officers Devine and Fray searched the stolen sedan but, at his hearing, neither could recall if they found the keys. Juvenile argues the Juvenile Officer "adduced no evidence concerning whether the steering column had been damaged, whether the ignition or door locks had been 'punched,' whether there were any broken windows, or whether the car had been repainted." Juvenile notes he was not the only person in the vehicle and argues he "articulate[d] a valid explanation for his presence." Juvenile argues "although [he] did flee from the vehicle, flight is not necessarily dispositive of his knowledge."

The Juvenile Officer argues the juvenile court heard sufficient evidence establishing Juvenile's knowledge he rode in someone else's car without consent. The Juvenile Officer argues Juvenile's explanation he was simply getting a ride home from a friend's house was not credible because he could not recall the friend's last name or address and Juvenile's mother did not know where he was. The Juvenile Officer quotes Juvenile's testimony, during the police chase, he thought, "I can't jump out of a moving car. It was just sit back and let the law do what they'll do." "Clearly," the Juvenile Officer argues, Juvenile knew "there was something going on with the vehicle/conduct of his fellow occupants which was suspect enough for the police to be pursuing them."

The Juvenile Officer notes the "general rule regarding flight evidence is that it is relevant and admissible as indicating consciousness of guilt." *State v. Cotton*, 621 S.W.2d 296, 300 (Mo.

App. E.D. 1981). Because Juvenile did not dispute his presence in the stolen vehicle during the "suspicious activity" described at his hearing or throughout the police chase, the Juvenile Officer contends there was sufficient evidence Juvenile knew he was in another person's vehicle without consent, constituting second-degree tampering.

*Analysis*

Flight alone does not establish knowledge of wrongdoing, but "[a]long with other evidence of guilt, flight can be considered in support of a conviction." *State v. Franco-Amador*, 83 S.W.3d 555, 559 (Mo. App. W.D. 2002) (citing *State v. Schwartz*, 899 S.W.2d 140, 144–45 (Mo. App. S.D. 1995)), *opinion adopted and reinstated after retransfer* (Sept. 26, 2002). Although flight "does not establish a defendant's guilty knowledge of a particular crime in comparison to other possible charges and is alone insufficient to support a conviction," it "demonstrates 'consciousness of guilt.'" *State v. McCauley*, 528 S.W.3d 421, 431 (Mo. App. E.D. 2017) (citing *State v. Evans*, 410 S.W.3d 258, 264 (Mo. App. W.D. 2013)). "A defendant's flight upon realizing the presence of police can constitute additional evidence of guilt . . . ." *State v. Keeper*, 787 S.W.2d 887, 890 (Mo. App. E.D. 1990) (citing *State v. Kerfoot*, 675 S.W.2d 658, 662 (Mo. App. E.D. 1984)). In *V.L.P.*, the Western District listed additional circumstances which could support the inference an occupant knew the vehicle was stolen: a destroyed ignition, stolen license plates, or an altered VIN number. 947 S.W.2d at 548 (citing *Costello*, 546 S.W.2d at 23). We consider the totality of the circumstances, including Juvenile's flight, in determining the sufficiency of the evidence supporting guilt. *Franco-Amador*, 83 S.W.3d at 559.

Juvenile argues an "inference of guilt requires more than simple presence in a stolen automobile." We agree. But the juvenile court heard much more. Officer Dawkins testified he saw an individual resembling Juvenile attempt to enter his marked police car, then get back into

the sedan. Then, Officer Dawkins saw the sedan behave suspiciously. When police arrived, the sedan evaded marked police cars with sirens by speeding, running stop signs, driving over a police spike strip, and driving onto the interstate with a flat tire. Juvenile then leapt from the moving car and ran from officers over a fence and into the woods, where he was found hiding by a police canine. When asked who owned the stolen car, Juvenile testified he was not sure.

Juvenile correctly notes we must view the facts and all reasonable inferences therefrom in the light most favorable to the judgment and accept them as true, disregarding all evidence and inferences to the contrary. *D.E.W.*, 617 S.W.3d at 519–20. Viewing the evidence before the juvenile court in light most favorable to its judgment, the totality of the circumstances provide substantial evidence Juvenile knew he was in a stolen car. *Franco-Amador*, 83 S.W.3d at 559.

Because substantial evidence supports the juvenile court's conclusion Juvenile knew he was in another person's car without permission, the juvenile court did not err in finding he committed second-degree tampering.

Point I is denied.

### Point II: Resisting Arrest

### Party Positions

In Point II, Juvenile argues the juvenile court's judgments of jurisdiction and disposition finding he resisted arrest are not supported by substantial evidence because there was not sufficient evidence he knew or reasonably should have known officers were attempting to lawfully detain him or he fled from the officers for the purpose of preventing his detention.

Juvenile notes section 575.150 provides a person resists arrest if he knows or reasonably should know "a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the

arrest, stop or detention," he resists the arrest, stop or detention " by using or threatening the use of violence or physical force or by fleeing from such officer . . . ."

Juvenile argues this section requires the Juvenile Officer prove: (1) he knew or reasonably should have known a law enforcement officer was attempting to lawfully detain him; (2) he resisted this detention by fleeing; and (3) he did so for the purpose of preventing the officer from effecting the detention. *McCauley*, 528 S.W.3d at 428 (citing *State v. Jones*, 479 S.W.3d 100, 109 (Mo. banc 2016)). Juvenile notes the Juvenile Officer does not need to establish his knowledge of the basis for his detention. *Id.* at 429 (citing *Jones*, 479 S.W.3d at 111). Juvenile cites *McCauley*, in which this Court affirmed a conviction for resisting arrest where the defendant observed and fled an officer in a marked police vest who yelled "Police, stop," while pursuing him. *Id.* at 424. Juvenile concedes he resisted detention by fleeing, but argues the juvenile court heard insufficient evidence on the other two elements.

First, Juvenile argues there was insufficient evidence he knew or reasonably should have known a law enforcement officer was attempting to lawfully detain him. Juvenile argues he "acknowledges that law enforcement officers were pursuing the vehicle in which he was riding," but "maintains that he had no knowledge, or should have reasonably known, that the police were attempting to detain him specifically." Unlike the police officer in *McCauley* who yelled "Police, stop," Juvenile argues "neither Sgt. House nor Off. Waldroup made any such command" while chasing him. Juvenile argues there was no evidence he "looked back and observed the officers while running from the scene." *Randle*, 456 S.W.3d at 538. Juvenile cites his own testimony: "When I had ran, it was, like, all the cars, like, the police cars going towards him. And then I really couldn't see nothing because I was already gone." Juvenile argues his "belief that law enforcement officers were not specifically pursuing him is fully supported by other evidence and

10

inferences therefrom," because he is an unsophisticated juvenile who had never had a police encounter and maintains he was not driving the vehicle. Juvenile argues he "asked a police officer 'what all completely happened' after he was taken into custody."

Second,[4] Juvenile argues there was insufficient evidence he fled for the purpose of preventing the detention. Juvenile argues "the Juvenile Officer failed to prove, beyond a reasonable doubt, that it was [Juvenile's] conscious object to not be caught by the police officers." Juvenile argues "neither Sgt. House nor Off. Waldroup testified that they identified themselves as police officers or commanded [Juvenile] to stop." Juvenile cites his own testimony that he did not hear officers tell him to stop. Juvenile argues he "ran only because the other individuals in the car told him to run and he was scared because he had never encountered the police before."

The Juvenile Officer argues the juvenile court did not err in finding Juvenile unlawfully resisted arrest because there was substantial evidence Juvenile knew or reasonably should have known law enforcement officers were attempting to lawfully detain him and he fled from the officers to prevent detention. "By his own admission," the Juvenile Officer argues Juvenile "was riding in a vehicle during a police pursuit." The Juvenile Officer recounts the testimony of several police officers asserting Juvenile was in a stolen car that "was spike-stripped" and "continued to flee," eventually onto an interstate, where "police testified that an occupant (later identified as [Juvenile]) jumped from the front passenger side door and fled on foot over a fence and into a subdivision," until Juvenile "was apprehended by canine officer 'Bax' and his handler, Officer Waldroup," while Juvenile was hiding. The Juvenile Officer argues flight evidence is relevant and admissible as indicating consciousness of guilt. *Cotton*, 621 S.W.2d at 300.

---

[4] Distinct claims of error should be raised in separate points. *Interest of D.L.P.*, 638 S.W.3d 82, 91 n.2 (Mo. App. E.D. 2021).

*Analysis*

As Juvenile pointed out in Point I, intent "usually is not susceptible of direct proof, but may be, and generally is, established by circumstantial evidence." *V.L.P.*, 947 S.W.2d at 547 (quoting *Costello*, 546 S.W.2d at 23). Juvenile also notes his mental state may be determined from evidence of his conduct before the act, from the act itself, and from his subsequent conduct. *T.R.T.*, 641 S.W.3d at 270–71 (citing *Davidson*, 521 S.W.3d at 644). Circumstances "need not demonstrate an absolute impossibility of innocence" to establish criminal intent. *Costello*, 546 S.W.2d at 24 (citing *State v. Aguilar*, 429 S.W.2d 754 (Mo. 1968)). And although flight does not establish guilty knowledge of a particular crime and is alone insufficient to support a conviction, it "demonstrates 'consciousness of guilt.'" *McCauley*, 528 S.W.3d at 431 (citing *Evans*, 410 S.W.3d at 264).

Juvenile misunderstands our standard of review in contending his position "is fully supported by other evidence and inferences therefrom." The question before this Court is not whether evidence supports his position, but whether the juvenile court's judgment is supported by substantial evidence. *A.G.R.*, 359 S.W.3d at 108 (citing *T.L.C.*, 950 S.W.2d at 295). In determining whether this standard has been met, we view the evidence in the light most favorable to the judgment and disregard all contrary inferences. *Id.* at 108 (citing *T.L.C.*, 950 S.W.2d at 295). We ignore evidence contrary to the trial court's ruling. *L.S.H.*, 652 S.W.3d at 413 (citing *Z.N.O.*, 566 S.W.3d at 615).

Despite Juvenile's contention he believed the police were trying to apprehend someone else as the car he was in evaded multiple police cars, drove at a high speed through stop lights and stop signs, drove over a spike strip, and careened across an interstate, Juvenile's decision to exit the moving car, jump over a fence, run from police officers and their canine, and hide in the

woods is evidence Juvenile knew or reasonably should have known law enforcement officers were attempting to lawfully arrest him and he fled for the purpose of evading that arrest.

"It is not necessary for the officer to say 'you are under arrest' when the circumstances indicate the officer is attempting an arrest." *State v. Hopson*, 168 S.W.3d 557, 562 (Mo. App. E.D. 2005) (citing *State v. Chamberlin*, 872 S.W.2d 615, 619 (Mo. App. W.D. 1994)). A high-speed pursuit with sirens activated is evidence supporting a resisting arrest conviction. *State v. Brooks*, 158 S.W.3d 841, 851 (Mo. App. E.D. 2005) (citing *Chamberlin*, 872 S.W.2d at 618). The Western District has stated, where a defendant evaded at high speeds a police officer with lights and sirens activated, "at some point, at least when [the defendant] fled on foot if not before, knew that the officer no longer intended a 'routine stop.'" *Chamberlin*, 872 S.W.2d at 619. Viewing the evidence "in the light most favorable to the judgment," and "disregard[ing] all contrary inferences," we conclude there was substantial evidence supporting the juvenile court's judgment. *A.G.R.*, 359 S.W.3d at 108 (citing *T.L.C.*, 950 S.W.2d at 295).

Because the juvenile court heard sufficient evidence to infer Juvenile knew or should have known law enforcement officers were pursuing him to make a lawful arrest and he fled with the purpose of preventing the arrest, substantial evidence supports the juvenile court's finding Juvenile committed, if he were an adult, resisting arrest.

Point II is denied.

**Conclusion**

Finding no error, we affirm.

_____
Philip M. Hess, Judge

Robert M. Clayton III, P.J. and
Cristian M. Stevens, J. concur.

13
