STATE of Missouri, Plaintiff–Respondent,

v.

Willis D. FEARS, Defendant–Appellant.

No. 27685.

Missouri Court of Appeals, Southern District, Division Two.

March 14, 2007.

---

Matthew Ward, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY W. LYNCH, Judge.

Appellant Willis D. Fears ("Defendant") was charged by amended felony information with two counts of child molestation in the first degree, under § 566.067, RSMo 2000. Count I charged that Defendant "subjected a juvenile, A.K., ... who was less than fourteen years of age, to sexual contact by touching her vagina with his mouth[.]" Count II charged Defendant with subjecting H.P., also less than fourteen years of age, to sexual contact by touching her vagina with his mouth and hands. Following a jury trial, Defendant was convicted on each count and sentenced as a prior sexual offender to two consecutive terms of life imprisonment. Defendant appeals, presenting three claims of trial court error. We affirm.

## 1) *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the following facts were presented at trial. In late October or early November 2003, nine-year-old H.P. was sent to live with Rose May ("Rose"), a friend of H.P.'s mother ("Mother"). Mother was having problems and "could not control" H.P. Rose offered to help by letting H.P. live with her. Also living with Rose at that time were her son, C.M., and Defendant, who was Rose's boyfriend.

Soon after H.P. moved into the home, Defendant subjected her to sexual contact at times when Rose and her son were not present or when they were occupied elsewhere in the home. This contact occurred in H.P.'s bedroom before bedtime and in Defendant's car during trips to the store or gas station. On some trips, Defendant had H.P. remove her clothing and sit on his lap while he drove with his pants down. He would treat her to candy only if "he could do what he wanted." H.P. stated that Defendant touched her privates [1] with his tongue and hands and told her not to tell anyone or she would be adopted again or go to a foster home, and he would go to prison.

Six-year-old A.K. befriended H.P. when A.K.'s family moved nearby in early February 2004. She often stayed overnight with H.P. on weekends. During some of these visits, Defendant subjected A.K. to sexual contact in H.P.'s bedroom and in the bathroom, always out of sight from Rose or her son. A.K. testified that Defendant licked her privates and told A.K. not to tell anyone. Both girls testified they witnessed Defendant do the same to the other girl.

H.P. moved away from Rose's home sometime around July 2004, after which time H.P. and A.K. had no further contact with each other. H.P. told Mother about the abuse around the end of December

---

**1.** The evidence established that the use of the words "private" or "privates" during the course of the trial by the prosecutor, defense counsel, and witnesses was in reference to genitals.

2004. Mother reported H.P.'s accusations to "Family Services." In January 2005, A.K. told her parents about the abuse, and they reported it to the police. When questioned by the police, Defendant denied the allegations and asked if it was H.P. who accused him.

The girls were referred to children's advocacy centers and interviewed separately. · The forensic interviews were videotaped. After the current charges were filed, the videotapes were admitted at an evidentiary hearing pursuant to § 491.075, RSMo Cum.Supp.2004, which was held on July 13, 2005. Over Defendant's objections, the trial court sustained the State's motion to allow the videotaped interviews into evidence, finding "that the time, content and circumstances of the statements ... provided sufficient indicia of reliability to allow the statements in evidence." The videotapes, H.P.'s offered by Defendant and A.K.'s offered by the State, were admitted at Defendant's trial and played before the jury. Both H.P. and A.K. testified during the trial.

### 2) *Point I—Admission of A.K.'s Videotaped Interview into Evidence*

■ In his first point, Defendant asserts that the trial court abused its discretion when it overruled Defendant's objection to the admission of the videotape of the forensic interview with A.K., which was conducted and videotaped by personnel at a child advocacy center in Camdenton on January 28, 2005. Defendant claims that "duplicative extrajudicial statements" therein violated his rights to due process and a fair trial, "in that the repetition of [A.K.'s] statements constituted improper bolstering, which was especially prejudicial given [Defendant's] frank and total denial of the charged offenses."

In support of his argument, Defendant cites *State v. Seever*, 733 S.W.2d 438, 441 (Mo. banc 1987). In *Seever*,

> [A] videotaped statement was admitted in evidence and played to the jury. The video was a statement by an eight-year-old child alleged to have been subjected to sexual contact. After the videotaped statement was played to the jury, the child testified. The court found that "[t]he statement and the testimony covered the same precise ground." *Seever* held this was "improper enhancement and rehabilitation." *Seever* concluded that "[t]his bolstering [was] a departure from the normal course of trial proceedings." The court concluded it could not say there was no prejudice. It reversed the judgment and remanded the case for a new trial.

*State v. Skipper*, 101 S.W.3d 350, 353 (Mo. App.2003) (internal citations omitted).

Defendant contends that here, the trial court disregarded *Seever's* prohibition against bolstering testimony, thus he was "prejudiced by this impermissible and repetitive testimony." Defendant, however, fails to mention or consider that the restriction in *Seever* to admission of duplicative testimony in cases under chapter 566 was modified and superseded by revisions to § 492.304 in 1992, when subsection 3 was enacted. *See Skipper*, 101 S.W.3d at 353. Although § 492.304 was amended in 2004 in other respects, subsection 3 remained unchanged.

Section 492.304.3, RSMo Cum.Supp. 2004, applicable to Defendant's case, states:

> If the visual and aural recording of a verbal or nonverbal statement of a child is admissible under this section and the child testifies at the proceeding, *it shall be admissible in addition to the testimony of the child at the proceeding whether*

*or not it repeats or duplicates the child's testimony.* (Emphasis added).

Specific conditions are mandated under § 492.304.1 [2] which must be satisfied in order to admit into evidence the visual and aural recordings of a child alleged to be a victim of an offense under the provisions of chapter 566, as in this case. Here, we find the record supports that those conditions were met. Accordingly, § 492.304.3 renders the videotaped interview of A.K. admissible. *See also State v. Mann,* 35 S.W.3d 913, 915–16 (Mo.App.2001).

Upon review of a trial court's decision to admit the videotaped statements of a victim, this Court is limited to a determination of whether the decision was an abuse of discretion, and we will affirm the decision unless there is no reasonable basis in the record to support it. *State v. Bullock,* 179 S.W.3d 413, 417 (Mo.App.2005). Here, there was no abuse of discretion in admitting the videotaped interviews, as § 492.304.3 specifically mandates that "this type of evidence 'shall be' admitted 'whether or not it repeats or duplicates' in-court testimony." *Mann,* 35 S.W.3d at 916. Finding no error in the trial court's compliance with "the clear, unambiguous language of § 492.304.3[,]" *id.,* Defendant's first point is denied.

### 3) *Points II and III–Sufficiency of the Evidence*

■ In his second and third points, Defendant claims that the trial court erred when it overruled his motions for judgment of acquittal at the close of the State's evidence and at the close of all of the evidence. Both motions challenged the sufficiency of the evidence. "When a defendant introduces evidence on his own behalf, he waives any error with respect to the denial of the motion for acquittal at the close of the [S]tate[']s evidence." *State v. Trujillo,* 869 S.W.2d 844, 846 (Mo.App. 1994). Therefore, we will consider only Defendant's allegation of error as to the trial court's denial of his motion for judgment of acquittal at the close of all of the evidence.

■ Upon review of a challenge to the sufficiency of the evidence, the evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the verdict, and all evidence and inferences contrary to the verdict is disregarded. *State v. Paxton,* 140 S.W.3d 226, 229

---

**2.** Section 492.304.1 provides:

1. In addition to the admissibility of a statement under the provisions of section 492.303, the visual and aural recording of a verbal or nonverbal statement of a child when under the age of fourteen who is alleged to be a victim of an offense under the provisions of chapter 565, 566 or 568, RSMo, is admissible into evidence if:

(1) No attorney for either party was present when the statement was made; except that, for any statement taken at a state-funded child assessment center as provided for in subsection 2 of section 210.001, RSMo, an attorney representing the State of Missouri in a criminal investigation may, as a member of a multidisciplinary investigation team, observe the taking of such statement, but such attorney shall not be present in the room where the interview is being conducted;

(2) The recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(3) The recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered;

(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement or to act in a particular way;

(5) Every voice on the recording is identified;

(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party; and

(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence.

(Mo.App.2004). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found Defendant guilty beyond a reasonable doubt. *Id.* "We consider whether a reasonable juror could find 'all of the elements of the crime' on the basis of the facts presented[.]" *State v. Davison*, 46 S.W.3d 68, 78 (Mo.App. 2001).

Section 566.067, RSMo 2000, provides that "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." "Sexual contact" is defined in § 566.010(3) as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" The sexual contact between Defendant and victim is the essential element in this case. *State v. Sprinkle*, 122 S.W.3d 652, 667 (Mo.App.2003).

In Point II, Defendant, relying upon the doctrine of destructive contradictions, contends that there was insufficient evidence "to prove beyond a reasonable doubt that [Defendant] touched [H.P.'s] genitals, because [H.P.'s] testimony on this issue was so contradictory and in conflict with the physical facts, the surrounding circumstances and common experience so as to preclude reliance thereon and rob her testimony of all probative force." Under Point III, Defendant, likewise relying upon the same doctrine, challenges the sufficiency of the evidence as to proof that he touched [A.K.'s] genitals, "because [A.K.'s] testimony on this issue was so contradictory and in conflict with the physical facts, the surrounding circumstances and common experience so as to preclude reliance thereon and rob her testimony of all pro-

bative force." Defendant contends that the lack of such probative value required corroboration of each victim's trial testimony to reconcile the inconsistencies and conflicts in each victim's testimony, and, in the absence of such corroboration, there is no substantial evidence to support his convictions. Defendant's contention on both points fails for two reasons: First, the victims' testimonies were not inconsistent as to the essential element of the offenses; and, second, even if their testimony was inconsistent, requiring corroboration, each victim corroborated the testimony of the other.

### a) *Doctrine of Destructive Contradictions*

The doctrine of "destructive contradictions" provides that a witness's testimony loses probative value when his or her statements at trial are so inconsistent, contradictory and diametrically opposed to one another that they rob the testimony of all probative force. *State v. Beckett*, 858 S.W.2d 856, 857 (Mo.App. 1993); *State v. Eyman*, 828 S.W.2d 883, 887 (Mo.App.1992). The doctrine is limited in application. It only applies to the respective elements of a witness's trial testimony, and not to any contradictions between trial testimony and prior out-of-court statements. *State v. Rodney*, 760 S.W.2d 500, 503 (Mo.App.1988); *State v. Burns*, 671 S.W.2d 306, 311 (Mo.App.1984). Moreover, mere discrepancies or conflicts in the witness's trial testimony are insufficient to invoke the doctrine; rather, such inconsistencies in testimony simply create "questions for jury resolution." *Beckett*, 858 S.W.2d at 857 (quoting *State v. Newberry*, 605 S.W.2d 117, 121 (Mo.1980)). The doctrine is properly invoked only when the testimony is so "inherently incredible, self-destructive or opposed to known physical facts" on a vital point or ele-

ment that reliance on the testimony is necessarily precluded. *Id.* (quoting *State v. Dupepe,* 241 S.W.2d 4, 7 (Mo. 1951)); *State v. Washington,* 383 S.W.2d 518, 521 (Mo.1964).

*T.L.C. v. T.L.C.,* 950 S.W.2d 293, 295 (Mo. App.1997). "[T]he doctrine only applies when a witness' own testimony contains inherently contradictory statements." *Davison,* 46 S.W.3d at 80.

### i) *H.P.'s Trial Testimony*

Defendant fails to point out any inherently contradictory statements in H.P.'s trial testimony. Defendant seeks refuge in *State v. Harris,* 620 S.W.2d 349, 353 (Mo. banc 1981), for the proposition that "[c]orroboration is not mandated unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful."

▇▇ Initially, Defendant argues, without citation to any relevant authority other than *Harris,* that H.P.'s trial testimony is not supported by any physical evidence and, therefore, is contradictory and in conflict with the physical facts—essentially the lack of any medical evidence of abuse. Defendant's speculation as to what physical evidence should exist if the victim's testimony is accurate does not rise to the level of creating a contradiction inherent in the victim's testimony. *Davison,* 46 S.W.3d at 80. Such speculation merely raises a jury question as to the credibility of the witness and the weight of the testimony and does not impinge upon its admissibility. *State v. Wright,* 998 S.W.2d 78, 82 (Mo.App.1999).

Defendant next argues, again without any citation to relevant authority other than *Harris,* that H.P.'s testimony contradicts the surrounding circumstances. However, in establishing the surrounding circumstances for these alleged contradictions, Defendant relies solely upon the testimony of other witnesses. Yet, the doctrine of destructive contradictions "does not apply to where the inconsistencies are between the victim's statements and those of other witnesses; the latter type of inconsistencies in testimony simply create questions of credibility for jury resolution." *Wright,* 998 S.W.2d at 81. Defendant fails to identify any part of H.P.'s testimony which is inconsistent with the surrounding circumstances inherent in her testimony. *Davison,* 46 S.W.3d at 80. Without the existence of such inconsistencies or contradictions internally within H.P.'s testimony calling into question its lack of probative value under the doctrine of destructive contradictions, her testimony simply raised credibility and weight questions for the jury to resolve in making factual determinations as to elements of the crime charged and the circumstances surrounding those elements. *Wright,* 998 S.W.2d at 81.

Finally, Defendant asserts, also without citation to any applicable authority other than his previous reference to *Harris:* "Common experience makes us further doubt the validity of her testimony." This assertion and supporting argument is nothing more than a repetition of Defendant's closing statement to the jury as to the credibility and weight to be given H.P.'s testimony. Defendant does not identify any parts of H.P.'s trial testimony which, when placed in juxtaposition to each other, are inconsistent or contradictory because they defy common experience. Without such contradictions within H.P.'s trial testimony making it "inherently incredible," the doctrine of destructive contradictions as to its admissibility is not applicable. *T.L.C.,* 950 S.W.2d at 295.

### ii) *A.K.'s Trial Testimony*

Defendant directs us to one alleged contradiction in A.K.'s trial testimony. De-

fendant claims that A.K. testified on direct and cross examination that the sexual contact only occurred on one occasion, but thereafter contradicted herself on cross examination by stating that it happened "[m]ore than once" and "[e]very week." Consideration of this alleged contradiction requires that A.K.'s testimony be discussed within the context within which it was given.

A.K. was eight years old and in the second grade at the time of trial. She was six years old at the time she befriended and visited H.P. in Defendant's home. A.K.'s testimony relevant to this point with emphasis added follows.

On direct examination by the State:

Q. Now was there ever a time when you were spending the night with [H.P.] that [Defendant] ever did anything bad to you?

A. Yeah.

Q. What happened?

A. He did what—he did that stuff that he did.

Q. Okay. We need to know what exactly he did.

A. He, um, he—he licked my private.

Q. Okay. Where is your private?

A. Huh?

Q. Where is your private?

A. Down here.

The Court: The witness is showing between her legs for the record.

Q. Okay. When he did *that* were your clothes on or were they off?

A. They were off.

Q. Okay. All your clothes or just—

A. Just my panties.

Q. Okay. How many times did *that* happen?

A. One.

\* \* \* \*

Q. Okay. Did he ever threaten you or anything?

A. No.

Q. Okay. Now you said *that* happened one time?

A. Yeah.

On cross examination by the Defendant:

Q. And you and [H.P.] had talked a little bit about her being molested by somebody at one time, didn't you?

A. No.

Q. You didn't?

A. Huh uh.

Q. No. Okay. Do you remember you spent the night over at [H.P.'s] every week or so?

A. Yeah.

Q. Okay. And the only time *this* happened to you was just once, right?

A. Yeah.

Q. Okay. Do you remember having anything like *this* happen when you were riding in a car with [Defendant]?

A. No.

Q. Do you remember anything like *this* happening when you guys were trying to use the swimming pool in the back yard?

A. Yeah.

Q. What happened then?

A. I had to go to the bathroom.

Q. Okay. Did [Defendant] do anything to you then?

A. Yeah.

Q. What did he do then?

A. He did *that*.

Q. Did *that?*

A. Um hum.

Q. Do *what?*

A. He did *what* he did.

Q. He did what he did. Is *that* when he did *it?*

A. Yeah.

Q. Okay. Now, *this* was in the back yard?

A. No, *it* was in the bathroom.

Q. *It* was in the bathroom

A. Um hum.

* * * *

Q. Okay, When we talked earlier a couple of days ago, you said that *this* happened to you only once.

A. In the bedroom.

Q. In the bedroom?

A. Um hum.

Q. Okay. And *that's* when you and [H.P.] were there?

A. Yeah.

Q. Okay. And at no other time did *that* happen?

A. No.

Q. So we're talking about just once?

A. More than once though.

Q. More than once though?

A. Like every week.

Q. Every week.

A. Um hum.

Q. *That* happened to you every week when you were there?

A. Yeah.

* * * *

Q. Did you tell your mom?

A. Yeah.

Q. And you told her right after *it* happened?

A. Yeah.

Q. And that's the only time that *it* happened?

A. Yeah. Yeah.

Q. Okay. Now tell us again what happened.

A. He licked me.

Q. He licked you?

A. Um hum.

Q. And you say [Rose] was in the basement—

A. Yeah.

Q. —doing the wash?

A. Yeah.

Q. Okay. Now this room—where was [C.M.]?

A. He was in the living room.

Q. And where was [Defendant]?

A. In the bedroom.

Q. What was he doing in the bedroom?

A. I don't know.

Q. This was in the day time or in the evening? At night or day?

A. Night.

Q. It was at night?

A. Um hum.

Q. Okay. Was it before you went to bed?

A. Yeah.

Q. Okay. And all three—all four of you were there—all five of you, I guess. You and [H.P.]?

A. Yeah.

Q. And [Defendant] and [Rose] and [C.M.]?

A. Yeah.

Q. Okay.

A. They were at the house; not in the bedroom.

Q. But they were not in the bedroom?

A. Only [Defendant].

Q. Okay. And this was *after* you came in from the pool?

A. Yeah.

On redirect examination by the State:

Q. Okay, [A.K.], you were talking about that he licked your privates?

A. Yeah.

Q. And that was—was there something to do with the swimming pool that day or was it a different time?

A. On the swimming pool day.

Given the number of references to "that," "it," "this," and "what," it is amazing that an eight-year-old child, questioned about such a personally embarrassing subject in front of a courtroom full of mostly strangers, followed these lines of questioning as well as A.K. apparently did. She clearly testified to one incident when Defendant had sexual contact with her by licking her privates which occurred in the bedroom with H.P. present on the evening of the day she and H.P. swam in the pool. The fact that this was the only time that Defendant licked her privates in the bedroom, as A.K. consistently testified, is not contradicted by her testimony that some, not otherwise described sexual contact by Defendant occurred in the bathroom earlier that day or in some location other than the bedroom every week. It is understandable that defense counsel would not want to explore in front of the jury the exact nature and location of these other incidents of sexual contact. But, having chosen that path, he cannot now claim that the lack of such specificity makes A.K.'s testimony contradictory to her unequivocal testimony concerning the one incident for which the defendant stood charged.

Defendant finally claims that A.K.'s trial testimony "was in conflict with physical facts, surrounding circumstances and common experience" and, as such, should be given no probative value. We reject these claims for the same reasons we rejected them regarding H.P.'s testimony. Each of Defendant's alleged contradictions in these areas is based upon either the lack of physical evidence of abuse or the testimony of other witnesses and is not premised upon any contradictions inherent within A.K.'s testimony. As previously discussed, the doctrine of destructive contradictions has no applicability under these circumstances. *Wright*, 998 S.W.2d at 81.

We would finally note that even if A.K.'s testimony could be read in a manner that appeared to be inconsistent or contradictory, such "statements by a young child relating a sexual experience does not, in itself, deprive the testimony of all probative force." *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). "Her testimony on direct examination included an explicit description of the conduct which proved the elements of the charged offense. Thus, the prima facie case was made." *Id.*

### b) *Corroboration*

Even if the doctrine of destructive contradictions was applicable to challenge the probative value of H.P.'s testimony as to the sexual contact wherein she was the victim, and A.K.'s testimony as to the sexual contact wherein she was the victim, Defendant would still fail in his claim that his convictions were not supported by substantial evidence. This is so because, if the doctrine is applicable, it merely requires that the witness' testimony be corroborated. *Id.*; *State v. Dudley*, 809 S.W.2d 40, 44 (Mo.App.1991). Contrary to Defendant's claim of lack of corroboration, each victim offered uncontradicted testimony corroborating the testimony of the other.

H.P. testified that Defendant touched her privates with his tongue. A.K. testified that she witnessed Defendant lick H.P.'s genitals. A.K. testified that Defendant "licked my private." H.P. stated that she saw Defendant touch A.K.'s genitals with his tongue. Corroboration was provided, as each victim testified at trial that she witnessed Defendant touching the other victim's genitals.

"The issue of both victims' credibility and the effects of any conflicting or inconsistent testimony [are] for the jury to determine." *Wright*, 998 S.W.2d at 82. It is not the function of this Court to reweigh the evidence. *State v. Collins*, 150 S.W.3d 340, 347 (Mo.App.2004). We find that each victim's testimony regarding sexual contact corroborated the testimony of the other victim, and there was sufficient evidence of the essential element of the crime of child molestation in the first degree upon which a reasonable juror could find Defendant guilty beyond a reasonable doubt on each count. Points II and III are denied.

### 4) *Decision*

The judgment is affirmed.

BATES, C.J./P.J., and BARNEY, J., concur.