STATE of Missouri, Plaintiff–Respondent,

v.

Eric P. DOUGLAS, Defendant–Appellant.

No. SD 29190.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 10, 2010.

758

John William Simon, St. Louis, MO, for Appellant.

Chris Koster, Atty. Gen., Terrence M. Messonnier, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Eric P. Douglas ("Appellant") appeals his convictions of assault in the first degree, a violation of section 565.050, and armed criminal action, a violation of section 571.015.[1] He was sentenced as a prior and persistent offender under section 558.016, RSMo Cum.Supp.2005, for a term of twenty-five years on each count, with the terms to be served consecutively. Appellant brings three claims of error: first, he challenges the sufficiency of the evidence for both convictions; second, he

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

claims an evidentiary error in the admission of documents which purportedly placed him at the crime scene; and third, he claims the trial court erred in the refusal to admit his mother's phone records. We find no error and affirm.

## FACTS

Appellant was convicted of shooting Kevin Chaison ("Victim") in the neck and buttocks in the early morning hours on July 25, 2006. In the light most favorable to the judgment,[2] the evidence was that on the date of the shooting a utility worker, Matthew Young, observed a man and lady standing near a Neon automobile at the corner of Grant and Walnut; he subsequently heard some "popping noises," which caused him to look up. When he looked up, he saw a man in a "blue hoodie,"[3] firing a gun at a man, Victim,[4] who had been near the Neon. The man in the blue hoodie continued to walk toward Victim as Victim tried to run away towards the back of a building. Mr. Young heard at least four to six shots being fired by the man in the blue hoodie but did not see any aggressive acts by the man who was shot. After the shooter stopped shooting, Mr. Young heard the lady say that she knew the shooter and that they would get him. Mr. Young was not able to identify the shooter, nor did he see the shooter point the gun at the lady.

Retha Brown lived next to Appellant; she testified that sometime between 6:30 a.m. and 7:00 a.m., Appellant came to her house wearing a dark-colored hoodie. He appeared upset and stated that someone had broken into his house and stolen some things. He asked Ms. Brown to give him a ride to Walnut and Grant. Ms. Brown drove him to that location and dropped him off before going to work.

Rosalind Lee testified that she lived with Victim. On the evening prior to the shooting, Ms. Lee and Victim had an argument and Victim took her car, which was a Neon. Victim returned between 5:30 a.m. and 6:00 a.m., on the date of the incident. Shortly before 7:00 a.m., as Ms. Lee was getting in her car to go to work and Victim was standing on the passenger side of the car, Appellant walked down the street and called for Victim to come talk to him. Victim began to walk toward Appellant. Ms. Lee saw Appellant walk up to the back of the car and, while on the sidewalk, fire three shots.

She testified that she knew Appellant because he had dated her sister and knew he carried a .22 pistol. Appellant was wearing a blue hoodie, which was identified by Ms. Lee as the same one the shooter was wearing. The hoodie was found by the police in the alleyway close to the scene of the shooting, together with some .22 ammunition. Ms. Lee further testified that, after Victim was shot and ran to the rear of the apartment complex, Ms. Lee spoke to Appellant and said, "I know you're not going to shoot me with that gun;" however, Appellant then turned the gun on her and fired but it was out of ammunition. Appellant did not move until she told him the police were coming and then "broke and ran" to the west and away from the apartment complex.

---

2. *State v. Fears*, 217 S.W.3d 323, 327 (Mo. App. S.D.2007).

3. Several witnesses identified a hooded sweatshirt, or a "blue hoodie," which was admitted into evidence as Exhibit 33, as being similar to the one the shooter was wearing the morning of the shooting.

4. Mr. Young did not identify Victim; however, there is no dispute that Victim was shot that morning at that location, therefore, we shall refer to the man by the Neon as Victim.

Victim was lying on the ground in the back of the building with a bullet wound in his neck and bleeding from his mouth; he had also been shot in the buttocks. After Appellant fled, Ms. Lee put Victim in her car and drove him to the hospital. He remained in the hospital for one week with serious injuries, including a tracheal tube in his throat for part of the week.

Ms. Lee further testified that Appellant's mother, Gwendolyn Douglas, called her and offered her $500.00 if she failed to appear for court in this matter. Mrs. Douglas countered that testimony by stating that it was Ms. Lee who had contacted her a week before trial requesting money to not show up and testify against Appellant. Mrs. Douglas also claimed that Ms. Lee asked for money to help her hide from the police and that, on a previous occasion, Ms. Lee asked for money in exchange for not coming to court.

The police found "two pieces of paper that were folded up on the sidewalk that led from the front of the apartment complex over to the driveway to the east side of the [apartment] building" during their search of the grounds. The officer did not know who wrote on them, but both referred to Appellant by his first name or his first and last names. One gave a telephone number of Tonya Shockley and the other said "Amanda can't come until this afternoon" and had the words "Eric Douglas" where a signature would be.

Victim did not testify. While he was on parole and supposed to be living in a St. Louis Release Center, he "walked away" prior to the trial and "never returned." After the shooting, Appellant went into hiding and was not seen by anyone or heard from by anyone for almost six months.

### POINT I

Appellant posits in his first argument that there was insufficient evidence to submit the case to the jury because the testimony of Ms. Lee was "rife with contradictions," that, in violation of its duty to not present "false evidence," the State presented Ms. Lee's testimony even though it did not believe her, and that the State failed to produce Victim.

### Internal Inconsistencies

■ Appellant argues that only Ms. Lee identified Appellant as the assailant, but her testimony was too internally contradictory to make a submissible case against Appellant. His argument appears to be that Ms. Lee's testimony violates the doctrine of destructive contradictions. This doctrine requires that a witness's testimony at trial be so inconsistent and contradictory as to rob the testimony of any probative value. *Fears*, 217 S.W.3d at 328. Mere discrepancies, however, in the witness's testimony are not sufficient to invoke the doctrine; instead, the conflict must concern vital points or elements. *Id.* Furthermore, the doctrine does not apply to contradictions about collateral matters. *State v. Cole*, 148 S.W.3d 896, 902 (Mo. App. S.D.2004).

Appellant argues that Ms. Lee's testimony concerning where the car was parked after Appellant returned the car, whether Appellant went to the east side of the building, whether Appellant called to Victim during the assault, and the relationship between Appellant and Ms. Lee's sister was inconsistent enough to nullify all of her testimony. We disagree.

■ First, although Appellant makes much of the testimony that Ms. Lee refers to the street where the car was located as "West Walnut" and "Walnut," we find this testimony to not even pass the first hurdle that it be inconsistent. Clearly, there was one street, which can be called "Walnut"

or described as "West Walnut." Likewise, Ms. Lee's description of Appellant as her sister's ex-boyfriend on one occasion and "us[ing] the present tense" to describe the relationship on a separate occasion has nothing to do with any issue in the case. There was no inconsistency in Ms. Lee's testimony regarding Appellant's identity, Appellant's blue hoodie, the gun, or the firing of the shots. A careful review of Ms. Lee's testimony indicates no inherently contradictory statements on a vital point or element such that reliance on the testimony is necessarily precluded. The supposed inconsistencies simply created questions for jury resolution. *Fears*, 217 S.W.3d at 328.

We further note that even if Ms. Lee's testimony regarding Appellant's presence at the scene was excluded, the testimony of Mr. Young that he saw a person with a blue hoodie at the scene, heard shots and heard Ms. Lee's comments that she knew the shooter, combined with Retha Brown's testimony that she knows Appellant, that he was wearing a dark hoodie, and that she brought him to the crime scene, certainly created evidence from which a jury could determine that Appellant was the shooter.

### Presentation of False Evidence

Appellant's second prong of his argument is that the prosecution presented "false" testimony as evidenced by the fact that the State did not charge Appellant with assault and attempted murder against Ms. Lee or charge Mrs. Douglas with offering a bribe for Ms. Lee not to testify. Appellant simply states as a fact his conclusion that the State could not have believed Ms. Lee because it did not charge Appellant with other crimes. Appellant failed to cite any cases to support his inference that the failure to charge other crimes constitutes an admission that

the State did not believe its own witness. We do not accept Appellant's conclusion. A prosecuting attorney has vast discretion in choosing if, and when, to file charges. *State v. Potts*, 181 S.W.3d 228, 232 (Mo. App. S.D.2005). There is no requirement that all potential charges relating to the same incident be filed at the same time. *See State v. Gardner*, 8 S.W.3d 66, 70 (Mo. banc 1999) (stating that "[a] prosecutor does not have to file all possible charges in an initial indictment" and "may hold some charges in abeyance, for strategic use"). Furthermore, to the extent that Appellant impugns the ethics of the prosecutor in his argument, we simply found no basis in the record to support Appellant's contention that the prosecutor brought false testimony to the jury.

### Victim Did Not Testify

Appellant's third basis for his claim that there was insufficient evidence to make a submissible case against him is that the State could have, and should have, produced Victim. Appellant fails to explain how the lack of Victim's testimony negates a submissible case against Appellant. Appellant claims the prosecutor argued that Appellant went to Victim's apartment complex to shoot him because Victim had broken into his home and taken things. In a bizarre analysis, Appellant then claims

> [o]n the prosecution's theory of the case, [A]ppellant ran afoul of the law not in shooting [Victim], but in not being quick enough about it. Mo.Rev.Stat. Section 563.031.2(2) entitles a person whose residence is being burglarized to use deadly force, and subsection 3 makes clear that he or she had no duty to retreat rather than using deadly force.

Appellant's "argument" is nonsense. There was no testimony that a burglary was taking place at Appellant's home at

the time of the shooting. There was no evidence that a burglary was in progress at all, nor does section 563.031.2 allow the victim of a burglary to shoot the alleged burglar at the burglary victim's convenience.

Furthermore, Appellant does not indicate how the State could have produced Victim other than to recite the tax base of the State and the monopoly that the State and federal government have "on the legitimate use of force and violence," and to argue that the State could have invoked a cooperative agreement to enlist the federal government in finding Victim. In essence, Appellant argues that the State just did not try hard enough to find Victim, but he fails to argue what obligation the State had to produce Victim for trial. We know of none. As noted, there was sufficient evidence to convict Appellant of both crimes without the testimony of Victim. Point I is denied.

### POINT II

■ Appellant claims the two notes found at the apartment complex should not have been admitted because there was not a sufficient foundation, the prejudicial effect substantially outweighed the probative value, and the admission prevented Appellant the right to confront his accusers. Frankly, we have trouble following Appellant's argument. Appellant admits that the trial court has broad discretion in admitting or excluding evidence at trial and that we review the trial court for prejudice and not mere error. Appellant argues that the admission of the notes, which in no way connect Appellant to the commission of the shooting, "screamed to the jury, '[Appellant] was here.'" There was not any question that Appellant was near the apartment complex at some time. The testimony was that Victim lived with Ms. Lee at 632 Walnut, an apartment complex located near the intersection of Walnut

and Grant, (Tr. 314, 324) and Ms. Brown gave Appellant a ride to Walnut and Grant on the morning of the shooting. The notes did not unfairly connect Appellant to the actual shooting.

■ Furthermore, Appellant's argument that the notes violated the confrontation guaranties of the state and federal Constitutions is wholly undeveloped in his argument. Appellant simply states that the trial court deprived Appellant of his constitutional rights to confrontation and the effective assistance of counsel when admitting the notes made it impossible for trial counsel to subject the notes to the full gamut of adversarial testing. Appellant argues that the notes were found in a place that was contrary to where Ms. Lee testified the assailant was. As we noted in Point I, the jury could consider the testimony of Ms. Lee. The jury could also consider the location of the notes. The notes did not connect Appellant with the actual shooting, only to the apartment complex. One of the notes was a phone number of a female, the second about another female. Neither of those people had any relationship to the shooting. The notes were non-testimonial in that they were not offered for the truth of the matter contained in the notes. The notes were admitted because they contained Appellant's name and were found at the scene of the crime, indicating that Appellant had possibly been in the vicinity at some time. We can find no prejudice to Appellant. Point II is denied.

### POINT III

■ In his final point, Appellant contends that the trial court erred in refusing to admit Appellant's mother's telephone records. Appellant claims that the records would have shown that Ms. Lee called Appellant's mother, not that Appellant's

mother called Ms. Lee. Appellant did not offer the records into evidence nor did he make any offer of proof. As the trial court properly noted, there was an improper foundation as Appellant did not provide an appropriate business records affidavit to the State in advance of trial nor present testimony from a records custodian authenticating the accuracy of the records. The trial court denied the admission of the records, specifically stating that the records, even if properly presented, were an attempt to provide evidence on a collateral matter.

 To properly preserve a claim regarding the exclusion of evidence for review, a party must make an adequate offer of proof. *State v. Miller*, 172 S.W.3d 838, 853–54 (Mo.App. S.D.2005). To be adequate, an offer of proof must establish what the evidence will be, its purpose and objective, and each fact necessary to establish its admissibility. *State v. Molina*, 272 S.W.3d 476, 478 (Mo.App. S.D.2008). Appellant did not preserve this issue for appeal. He did not make any offer of proof, he did not submit the records to the trial court, and he did not follow basic foundational requirements for the admission of the notes.

 Despite these deficiencies, the trial court advised Appellant's counsel to proceed with putting on the evidence, even in the absence of a proper foundation, and stated it could be persuaded; however, Appellant's counsel did not do so. At no time were the records marked as an exhibit or offered. Trial counsel simply asserted that when the records were received, one of the entries would show that Mrs. Douglas received an incoming call from Ms. Lee. Thus, we review for plain error only. The trial court committed no error, plain or otherwise, in refusing the telephone records.

Plain error review involves a two-part test. *State v. Garrison*, 276 S.W.3d 372, 374 (Mo.App. S.D.2009). The first part is whether the record discloses a facial basis for concluding that plain error has in fact occurred. *Id.* If a facial review indicates that plain error may have occurred, this Court then reviews to determine if, as a result of that error, Appellant suffered a manifest injustice. *Id.*

Appellant argues that he had a constitutional right to present a complete defense and to a fair trial. That is a given. The problem with Appellant's argument is that he has not shown how the telephone records deprived him in any way of his complete defense. The trial court correctly ruled that the documents had no proper foundation. Even if Appellant had properly presented the records, how does a record of a phone call between Ms. Lee and Appellant's mother exonerate Appellant? Both parties contend there was a discussion regarding Ms. Lee not testifying at the trial. It is entirely a collateral matter as to whether Ms. Lee placed one call to Appellant's mother. There was testimony that Ms. Lee and Appellant's mother had more than one conversation. Even if the records showed that Ms. Lee had called Appellant's mother on that one occasion, it would not rebut any testimony at the trial. The phone records themselves do not rebut Ms. Lee's testimony regarding the offer of money not to testify. The jury heard testimony from Ms. Lee and from Appellant's mother on that issue. In both instances, there was no allegation that what Ms. Lee was going to testify to was false; that she, according to Appellant, offered not to testify in exchange for money does not assist Appellant. Her testimony was clearly not favorable to Appellant under either version. The trial court did not err as discussed in Point I in refusing the phone records. Appellant can further show no prejudice in the denial of the

records concerning Ms. Lee's testimony given the testimony of Mr. Young and Ms. Brown. Point III is denied.

The conviction is affirmed.

SCOTT, C.J., RUSSELL, Sp.J., concur.