**STATE of Missouri, Plaintiff–Respondent,**

v.

**Katherine C. MARTIN, Defendant–Appellant.**

**No. SD 30957.**

Missouri Court of Appeals, Southern District, Division One.

March 13, 2012.

Motion for Rehearing or Transfer Denied April 9, 2012.

Richard H. Sindel, Clayton, MO, for Appellant.

Chris Koster, Attorney General, Timothy A. Blackwell, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Katherine C. Martin ("Appellant") appeals her conviction for driving while intoxicated. She brings four points on appeal: the first two points claim a judgment of acquittal should have been granted; the third that the court failed to take judicial notice of a previous civil case; and, finally, a complaint about the State's closing argu-

ment. We find no error and affirm the judgment.

In February of 2009, Crystal Cox, a dispatcher with Crawford County 911, was driving on I–44 towards Cuba, Missouri; Crystal Rodriquez, a deputy with the Crawford County Sheriff's Department, was a passenger in Cox's vehicle. They observed an SUV swerving and weaving between lanes. Rodriquez called dispatch and gave the license plate number and a description of the vehicle. The Cox vehicle and the SUV both exited at the 208 mile marker at Cuba, Missouri.

Officer Benjamin Scharfenberg, with the Cuba Police Department, then received the dispatch regarding a possible drunken driver in a white Range or Land Rover.[1] He was given the license plate number of the vehicle. Soon after, central dispatch informed Scharfenberg that the law offices of Lange and Lange[2] had reported a female who appeared to be intoxicated inside the building. When he traveled to the law offices, he observed Appellant's vehicle, which had the same license plate number as that earlier reported. Appellant's vehicle was parked so that the front tires went over the parking stop and at least one tire was on the sidewalk. No one from Lange and Lange testified that Appellant had been observed driving her vehicle to the offices.

Scharfenberg entered the building and found Appellant on the telephone. The officer noticed that Appellant was swaying back and forth while standing and smelled of alcohol. When asked by Scharfenberg for her identification and if she had been

---

1. Officer Scharfenberg testified that he could not recall if the vehicle described was a Land or Range Rover. Throughout the transcript, the terms "Land" or "Range" Rover are used interchangeably by both witnesses and attorneys. The probable cause statement notes the vehicle was described as a Land Rover.

2. An employee of the law firm, Janice Byrd, testified that the firm name was actually "Lange, Paulus, Howald, and Smith" at that time.

driving her vehicle, Appellant stated that her friend Katie had been driving. The officer inquired to Katie's whereabouts, and Appellant responded that Katie worked at H & R Block and pointed to an H & R Block building which was visible about half a block away. Scharfenberg asked if Katie was at the H & R Block building, but Appellant responded "no, she just works there." Appellant could not or would not provide Katie's last name or her current whereabouts. Scharfenberg also testified that while he was with Appellant at the law offices he spoke with Rodriquez on the phone and obtained her description of the driver she saw on the interstate, which was someone with short, blondish-brown hair who was wearing a dark shirt and big, black sunglasses. Appellant matched that description.

Scharfenberg asked Appellant to recount the past three hours and she responded, "I had lunch at the Locker Room and had two drinks, then I drove to Cuba to pick up my files at Lange and Lange and that's when you guys showed up." Based on his training, experience, and observation of Appellant's behavior and statements, Scharfenberg believed that Appellant was very intoxicated. Lieutenant Paul Crow also arrived on the scene and had Appellant attempt a field sobriety test. He too believed her to be intoxicated.

Thereafter, Scharfenberg transported Appellant to the police station. At the station, Scharfenberg asked Appellant to perform the one-leg stand and the nine-step walk and turn field sobriety tests. Appellant stated during the tests, "I can't do these tests[.] I'm too drunk but it should not make any difference because I was not driving." Scharfenberg agreed that her lack of balance could cause her injury if she were to continue attempting the tests. Lieutenant Crow administered

a breath alcohol test and Appellant's blood alcohol content registered at .348 percent. At that point, Scharfenberg placed Appellant under arrest and planned to take her to jail; however, due to Appellant's high blood alcohol content, Scharfenberg transported her to Missouri Baptist Hospital to have her examined by medical professionals and obtain a statement from them indicating that she did not have alcohol poisoning and was fit for confinement in the jail. On the way to the hospital Appellant continually asked to be released, attempted to bribe Scharfenberg with money, and offered to go home with him for the night if he would release her. The medical professionals determined that Appellant was fit for confinement and Scharfenberg transported her to jail.

At the request of the Cuba Police Department, Cox and Rodriquez traveled to the police headquarters the same day they had seen the erratic driving on the interstate. While at the police station, Cox was asked if she could identify Appellant as the intoxicated driver. Cox testified that when she identified Appellant as the intoxicated driver, Appellant was in the middle of taking a field sobriety test. Cox testified that she identified Appellant at the police station when her memory of the driver was better but, on cross-examination, stated that she did not know for certain that Appellant was the driver, only that Appellant looked like the driver. Similarly, Cox was unable to make a positive court room identification of Appellant as the driver. Cox did, however, testify that she drove past a white SUV on I–44 and, while looking in her rear view mirror, saw a woman with blondish-brown hair wearing a black blouse. Cox did not remember the driver wearing black sunglasses.

Rodriquez provided a written statement concerning the vehicle and the driver that

she had seen earlier that day. In her statement, which was given nearly sixteen months before trial, Rodriquez declared that she observed "a white vehicle swerving and weaving" and described the driver as "a white female with blondish-brown hair, short in length." At trial, Rodriquez testified that she had the opportunity to observe the person driving the vehicle. She testified that the driver had short, blondish-brown hair, was wearing a black shirt, and was wearing sunglasses. She testified that they drove alongside the vehicle, she could clearly see the driver, and that they never passed the car. Rodriquez also stated that she could only "vaguely remember" but she believed the vehicle was a black SUV. Rodriquez identified Appellant at trial as the driver she witnessed swerving on the interstate.

Officer Scharfenberg testified that no one from the police department went to H & R Block on the day Appellant was arrested and no one interviewed witnesses from H & R Block until May of 2010. Rhonda Birkner, an employee of the H & R Block in Cuba, testified that no one by the name of Katie worked in her office, that there was a Katie in the Rolla office, and that neither that Katie nor the police were in the office on the day Appellant was arrested.

Appellant requested that the trial court take judicial notice of its own findings as to the credibility of the prior testimony of the State's eyewitnesses in the previous civil case between Appellant and the Director of Revenue ("the Civil Case"). The court denied the request because the State was not a party to the previous proceeding and because the two cases involved different standards of proof.

The trial court found Appellant guilty of driving while intoxicated and sentenced her to four years imprisonment but sus-

pended execution of that sentence. This appeal followed.

Appellant's points are as follows:

I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AND IN SUBSEQUENTLY FINDING THE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT OF DRIVING WHILE INTOXICATED, BECAUSE—AFTER APPLYING THE PRESUMPTION THAT THE COURT COULD ONLY CONSIDER ADMISSIBLE EVIDENCE, AND THEREFORE NOT CONSIDERING ALL THE EVIDENCE PRESENTED TO THE COURT THAT WAS INADMISSIBLE DUE TO: (1) THE COURT'S PREVIOUS FINDING IN THE TRIAL DE NOVO AGAINST THE DEPARTMENT OF REVENUE THAT THERE WAS NO PROBABLE CAUSE TO ARREST THE DEFENDANT AND THE APPLICATION OF COLLATERAL ESTOPPEL, AND (2) THE FACT THAT IDENTIFICATION EVIDENCE WAS BASED ON PROCEDURES THAT WERE IMPERMISSIBLY SUGGESTIVE RENDERING THE IDENTIFICATIONS OF APPELLANT UNRELIABLE—THERE WAS INSUFFICIENT REMAINING CREDIBLE AND RELIABLE EVIDENCE TO FIND THAT THE DEFENDANT "OPERATED A MOTOR VEHICLE WHILE INTOXICATED" AS REQUIRED FOR A CONVICTION IN THAT TESTIMONY OF THE STATE'S EYEWITNESSES AND SUBSEQUENT IDENTIFICATION OF THE DEFENDANT WAS SO INCONSISTENT AND CONTRADICTORY THAT THEY COMPLETELY LACKED ANY PROBATIVE VALUE.

II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AND IN SUBSEQUENTLY FINDING THE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT OF DRIVING WHILE INTOXICATED, BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO PROVE THAT THE DEFENDANT "OPERATED A MOTOR VEHICLE" AS REQUIRED FOR A CONVICTION, IN THAT THE IN–COURT TESTIMONY OF CRYSTAL RODRIGUEZ, THE ONLY WITNESS WHO IDENTIFIED APPELLANT AS THE DRIVER, WAS SO INCONSISTENT AND CONTRADICTORY THAT IT LACKED ANY PROBATIVE VALUE. III. THE TRIAL COURT ERRED IN FAILING TO TAKE JUDICIAL NOTICE OF THE COURT'S OWN FILE IN THE CASE OF KATHERINE MARTIN V. DIRECTOR OF REVENUE, CAUSE NO. 09CF–CC00033, BECAUSE THE FILE WAS PHYSICALLY BEFORE THE COURT AND BECAUSE THE RECORD IN THAT CASE FORMED AN ESSENTIAL ELEMENT OF APPELLANT'S DEFENSE, IN THAT THE COURT HAD PREVIOUSLY FOUND THAT THE STATE'S EYEWITNESSES WERE NOT CREDIBLE BECAUSE THEIR TESTIMONY WAS SO CONFLICTING AND INCONSISTENT ACCOMPANIED BY THEIR INABILITY TO IDENTIFY THE DEFENDANT AS BEING THE OPERATOR OF THE MOTOR VEHICLE BY A PREPONDERANCE OF THE EVIDENCE IN THE DIRECTOR OF REVENUE CASE. IV. THE TRIAL COURT ERRED IN OVERRULING DEFENSE COUNSEL'S OBJECTION THAT THE STATE'S ADVERSE INFERENCE ARGUMENT MISSTATED THE LAW, BECAUSE IF AN ADVERSE INFERENCE IS DRAWN FROM FAILURE TO CALL A WITNESS THE COURT MAY INFER THAT THE TESTIMONY WOULD HAVE BEEN UNFAVORABLE TO THAT PARTY, IN THAT THE STATE ARGUED THE COURT COULD AND SHOULD PRESUME THAT THE WITNESS'S TESTIMONY WOULD HAVE BEEN UNFAVORABLE TO APPELLANT.

The points are intertwined and contain several subsections. We shall address them out of order and as we discern the points.

Appellant's third point appears to be an evidentiary challenge of the court refusing to take judicial notice of its previous ruling in the Civil Case that the State's eyewitnesses were not credible. Because the third point is the touchstone of Appellant's first and second points, we shall address her third point first. Appellant brought an action against the Director of Revenue in the Civil Case to have her driving privileges reinstated and her suspension removed. Appellant claims the trial court erred in this case by failing to take judicial notice of the finding in the Civil Case that the eyewitnesses' testimony was so conflicting and inconsistent that, when accompanied by their inability to identify Appellant as the operator of the motor vehicle, their testimony held no weight. Although implicit in this argument is that the Civil Case must have a collateral estoppel effect in the current matter, the point claims the trial court erred by refusing to take judicial notice of the Civil Case. We limit our discussion on this point to whether the trial court erred by not taking judicial notice of the Civil Case.

■ We review a claim that the trial court erred by refusing to take judicial notice of an issue under the abuse of discretion standard. *Kansas City v. Dugan*, 524 S.W.2d 194, 197 (Mo.App.K.C.D.1975). A trial court has broad discretion to admit or exclude evidence and such discretion is only abused when a determination is clearly against the logic of the circumstances and is unreasonable and lacking of careful consideration. *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). This Court reviews the determination for prejudice, not just error, and will reverse if the error was so prejudicial that it is a reasonable probability that the error affected the outcome and deprived the defendant of a fair trial. *Id.* at 145–46.

■ If a fact has been judicially noticed, there is no longer a need to establish that fact by evidence. *St. Louis County v. Skaer*, 321 S.W.3d 350, 352 (Mo.App. E.D. 2010). A judicially noticed fact must have independent reliability and trustworthiness since such fact may be established without supporting evidence. *Id.* In Missouri, if a fact is within the common knowledge of people of ordinary intelligence, judicial notice may be taken of that fact. *Id.* Judicial notice must be exercised cautiously and must be declined if there is doubt about the notoriety of a fact. *Gordon v. Gordon*, 739 S.W.2d 728, 730 (Mo.App. S.D.1987).

■ The State argues that, "Appellant did not ask the court to take judicial notice of a fact that is within the common knowledge of people of ordinary intelligence, but instead asked the court to take judicial notice of its files in order to establish as a 'fact' what is actually a contested issue in this case." We agree. The credibility of the witnesses' testimony in a prior proceeding is not a fact within the common knowledge of people of ordinary intelligence.

In her reply brief, Appellant argues:

Appellant was not requesting the court to take judicial notice of a fact, but to take judicial notice of its own file, wherein the judge found the same witnesses to be wholly lacking in credibility due to the inconsistencies in their testimony. Appellant did not request that the court take judicial notice of its own file to establish the contested "fact" that the Appellant was the driver in this case. That would no[t] be a "fact" which is within the common knowledge of people with ordinary intelligence.... Rather, judicial notice of the court's own file would have helped establish and prove the inconsistencies in the State witness' [sic] testimony, their contradictory statements, a prior finding that their testimony lacked probative value because it was "conflicting and without credibility," *and* that there was insufficient evidence to prove Appellant was the driver.

In essence, Appellant contends the earlier finding would buffer her argument that the two witnesses' testimony was contradictory. Although Appellant makes much of the fact that the same judge presided at the civil trial as the criminal trial, that fact is not relevant to whether the court erred in the criminal trial in not taking judicial notice of the Civil Case. These were two separate proceedings with separate standards of proof, different parties, and different testimony. The court did not abuse its discretion in refusing to take judicial notice of the previous case. The trial court was well aware of the previous finding from the arguments of counsel, the parties were able to cross-examine the witnesses on their previous testimony, and additional evidence from the witnesses was introduced. In fact, it is the additional evidence that Appellant complains of as being contradictory in her second point in this appeal. Even if the court had taken judicial notice of the file, for the reasons

set forth below, the court was not bound by those findings, and there is no prejudice to Appellant. The trial court did not abuse its discretion when it refused to take judicial notice of the Civil Case. Point III is denied.

Point II is also based, at least partially, upon the purported finding from the Civil Case. In her second point, Appellant argues that Rodriquez' testimony[3] was so contradictory that it should be disregarded under the doctrine of destructive contradictions and that the State, therefore, failed to make a submissible case for driving while intoxicated. Specifically, Appellant argues that Rodriquez testified contradictorily because in the seconds that her vehicle pulled alongside of Appellant's vehicle, Rodriquez first testified that she was able to identify Appellant because Appellant turned to face her but also testified that she was looking at her cell phone during this time. Appellant next contends that the identification of the vehicle was contradictory because she testified that it was black but also testified that she wrote in a statement that the vehicle was white.

 The doctrine of destructive contradictions requires that a witness's testimony or statements at trial be so inconsistent, contradictory, and diametrically opposed that the testimony is robbed of all probative force. *State v. Fears*, 217 S.W.3d 323, 328–29 (Mo.App. S.D.2007). The doctrine is limited to the respective elements of a witness's trial testimony, and not to contradictions between trial testimony and prior out-of-court statements. *Id.* "Mere discrepancies, however, in the witness's testimony are not suffi-

cient to invoke the doctrine; instead, the conflict must concern vital points or elements." *State v. Douglas*, 304 S.W.3d 756, 760 (Mo.App. S.D.2010).

 Rodriquez' testimony that she was looking at her phone but was also able to identify Appellant when Appellant turned and looked her direction is not inconsistent to the point of invoking the doctrine of destructive contradictions. Rodriquez was clearly operating her phone while they were alongside of Appellant but was still able to gather enough identifying information about the vehicle and driver to give accurate descriptions to the police as evidenced by the fact that when the police arrived at the law offices they found a vehicle and an intoxicated woman matching those descriptions. Further, Rodriquez went to the police station and identified Appellant as the intoxicated driver on the same day that she had viewed her driving erratically on the interstate supporting that she was able to periodically look at her phone and look up to observe the driver, vehicle, and license plate during the pass attempt.

 Likewise, the mischaracterization of the SUV as black at trial does not invoke the doctrine of destructive contradictions. Rodriquez testified that she "believe[d] it was a darker colored SUV." She also admitted that the statement she gave the day she saw the vehicle would be more accurate. On cross-examination the following questioning took place:

Q. It's also your testimony today though she was driving a black Land Rover, correct?

---

3. Appellant argues Rodriquez' testimony was "suffused and riddled with numerous inconsistencies[,]" including (1) when or how Rodriquez observed Appellant while on the interstate (Appellant turned and faced her; Rodriquez was looking down at her phone

when the vehicles were side by side and/or when Cox sped past Appellant; or in Appellant's rear view mirror when Cox was driving behind her), and (2) the description of Appellant's vehicle (its color and whether it had a chrome tailgate).

A. I said I didn't know, remember what color it was.

Q. When I asked you what color it was you said black, that's what you said wasn't it?

A. I think it was black but I'm not for sure.

Q. Okay and you also said, you testified back [on] February 5, 2009 and you indicated in your report that it was white, correct?

A. I do not remember.

While her memory has faded regarding the color of the vehicle, her testimony was consistent that she was unsure of the color of the vehicle. The doctrine only applies to the respective elements of a witness's trial testimony, and not to any contradictions between her trial testimony and prior out-of-court statement to the police. *Fears,* 217 S.W.3d at 328.

The only real issue critical in this case was whether Appellant was driving the vehicle on the interstate. At trial, Rodriquez positively identified Appellant as the driver. Given the uncontradicted facts that Rodriquez called in the license plate number, the license plate number matched the vehicle at the law offices, Appellant owned that vehicle, Appellant was not with any companion at the law offices, and Appellant admitted that she had traveled from the Locker Room to Lange and Lange, the State made a submissible case. Point II is denied.

We shall now turn to Appellant's first point: that the trial court erred in refusing to grant a judgment of acquittal because there was insufficient evidence to find that Appellant was operating the vehicle had the court properly excluded improper evidence. Appellant waived her right to a jury trial and this case was tried before the court without a jury. In a court-tried criminal case, pursuant to Rule 27.01(b),[4] the trial court's findings have the force and effect of a jury verdict. *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002); *State v. Burks,* 373 S.W.3d 1, 3 (Mo.App. S.D.2012). "Appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Crawford,* 68 S.W.3d at 408. On appeal all evidence tending to prove Appellant's guilt is accepted as true, together with all inferences favorable to the State that can be drawn from the evidence, and all contrary evidence and inferences are disregarded. *Burks,* 373 S.W.3d at 2.

Appellant's argument includes her contention that the collateral estoppel effect of the prior Civil Case precludes a finding of probable cause and that the trial court should not have considered an impermissibly suggestive identification at the police station. What we glean from Point I is that Appellant argued, under the guise of taking judicial notice of the Civil Case, that there is sufficient privity between the Director of Revenue and the State to determine that the issues at trial were fully litigated in the Civil Case. We disagree.

Collateral estoppel is a doctrine that bars the relitigation of an issue already determined by a final judgment in a prior proceeding involving the same or a different claim. *Consumers Oil Co. v. Spiking,* 717 S.W.2d 245, 249 (Mo.App. W.D.1986). When determining whether the State is estopped from asserting facts determined in a collateral proceeding, a court should consider: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the

4. All rule references are to Missouri Court Rules (2011), unless otherwise specified.

merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in a proper suit. *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo. banc 1984).

Missouri courts have consistently held, for collateral estoppel purposes, that no relationship exists between a determination of fact in a criminal case and a determination of fact made in a prior administrative proceeding. *State v. Rotter*, 958 S.W.2d 59, 64 (Mo.App. W.D.1997) (holding that an administrative finding that defendant did not refuse a breathalyzer test did not have collateral estoppel effect in defendant's criminal trial for DWI); *State v. Mayfield*, 970 S.W.2d 917, 919 (Mo.App. S.D.1998) (holding that finding in an administrative action that probable cause did not exist to revoke defendant's license did not have collateral estoppel effect in subsequent criminal action for felony DWI). *Rotter* and *Mayfield* relied on the following as further support for this principle: *State v. Warfield*, 854 S.W.2d 9, 11–12 (Mo.App. S.D.1993) (holding administrative finding that defendant was not the driver of the car did not have collateral estoppel effect in criminal action); *Humbert v. Benton*, 811 S.W.2d 501, 502 (Mo. App. S.D.1991) (holding that finding in criminal action that probable cause did not exist to arrest defendant for DWI did not have collateral estoppel effect in administrative action); *State v. Purvis*, 739 S.W.2d 589, 591 (Mo.App. S.D.1987) ("The operation of a motor vehicle while under the influence of [intoxicants] gives rise to separate and independent proceedings, one civil and one criminal, and the outcome of one proceeding is of no consequence to the other[.]"); *Lock v. Director of Revenue*, 767 S.W.2d 385, 386 (Mo.App. E.D.1989) (holding that administrative finding that defendant drove with blood alcohol content in excess of legal limit was not affected by criminal charges filed against defendant); *Meeh v. Director of Revenue*, 741 S.W.2d 866, 868 (Mo.App. E.D.1987) (holding that defective information in administrative hearing did not affect validity of criminal action). There was no error in refusing to apply the doctrine of collateral estoppel to the prior Civil Case.

We return to Appellant's argument that there was insufficient "probative" evidence that she was driving while intoxicated. Appellant does not take issue with the finding of intoxication, only the finding that she was driving while intoxicated. In Point II we held that the testimony of Rodriquez was properly admitted despite the doctrine of destructive contradictions. Therefore, the court had before it Rodriquez' testimony. Additional evidence supports the finding that Appellant was driving. Appellate review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to a determination of whether sufficient evidence was adduced from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Girdley*, 957 S.W.2d 520, 523 (Mo.App. S.D.1997). This Court accepts as true all evidence and reasonable inferences therefrom tending to support the verdict while disregarding all evidence to the contrary. *Id.* If the trial court's determination is supported by substantial evidence, the judgment is to be affirmed. *Id.*

The appellate court reviews the sufficiency of the evidence in a court-tried criminal case by applying the same standard used in a jury-tried case. Trial courts have broad discretion over questions regarding relevance and admissibility of evidence. We will not overturn

those decisions unless the court has clearly abused its discretion. Judicial discretion is abused only when the trial court's ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice.

*State v. Miller*, 153 S.W.3d 333, 336 (Mo. App. S.D.2005) (internal quotations and citations omitted). In a court-tried case, reversal is required where the record is clear that the court relied on evidence that was legally inadmissible. *State v. Sladek*, 835 S.W.2d 308, 313 (Mo. banc 1992).

At the time Cox and Rodriquez viewed Appellant's vehicle on the interstate, Rodriquez called in an identification of the vehicle to the police department, including the vehicle description and license plate number evidencing her attentiveness. In their respective statements to the police, Cox and Rodriquez gave nearly identical descriptions of Appellant to the police and both statements accurately reflected Appellant's clothing and hair color. When Scharfenberg arrived at the law offices where Appellant's vehicle was parked askew, the vehicle matched the description of the vehicle and license plate given by Rodriquez to dispatch. Scharfenberg testified that while at the law offices he spoke with Rodriquez by phone and she described the driver she saw on the interstate as having blondish-brown hair and wearing a dark shirt and large sunglasses. This evidence alone would be sufficient; however, in this case, Rodriquez called in the license plate number as well.

██ The car with that license plate number was parked at the law offices where there was a report of an intoxicated woman in the building. Appellant stated that she had driven from the Locker Room to Lange and Lange. The car belongs to Appellant. Appellant was not with any companion at the law offices and no witnesses ever saw another person in the vehicle or with Appellant. Her contrary statements not withstanding, sufficient evidence exists to convict Appellant, as the driver, of driving while intoxicated. Point I is denied.[5]

Finally, Appellant complains about an argument made by the prosecutor in closing argument. The prosecutor stated:

[Prosecutor]: It should also be pointed out that defense although asked but did not disclose an alibi defense, such as I was not in the driver's seat, I was in another seat. If they did that they would of had to disclose Katie Hoeffer. The first time we ever heard the name of Katie Hoeffer was today. And your Honor that means that that witness was more particularly available to the defense than it was to the state. And the fact that they did not subpoena or call her can entitle the court to presume that therefore her testimony would be adverse to them. If she had been equally available to either party that would not be the case. But since they never told us the last name until today, that presumption may be made.

5. Appellant asserts in her argument the out-of-court identification of Appellant by Cox and the references to both the out-of-court identification made by Rodriquez and the in-court identification of Appellant by Rodriquez were inadmissible because they were made in circumstances that were impermissibly suggestive and unreliable. Appellant argues that if the trial court relied on this identification evidence when determining her guilt then reversal is required because the court cannot rely on inadmissible evidence. Appellant did not object to the identification testimony at trial; therefore, the issue was not preserved for appellate review. This Court is not required to review for plain error. *State v. McCauley*, 317 S.W.3d 132, 135 (Mo.App. S.D.2010). We decline to do so given the strength of the case against Appellant.

Appellant objected to the State's request that the trial court make an adverse inference regarding Katie Hoeffer claiming that the State was misstating the law as to the defendant's burden. The court did not make a verbal ruling, but advised the State to continue with its closing argument which presumptively overruled the objection. *White v. American Republic Ins. Co.*, 799 S.W.2d 183, 192 (Mo.App. S.D. 1990).

 On appeal, Appellant argues that the State misstated the law because the court can only infer that the testimony would be negative and that an inference is permissive while a presumption, as the State requested of the court, is mandatory. "[A] trial court has broad discretion in determining the allowable scope of closing argument." *State v. Jackson*, 248 S.W.3d 117, 125 (Mo.App. S.D.2008). In a bench-tried case, "[a] judge is presumed to be able to disregard inappropriate or improper argument and proceed to a fair result." *Id.* We see nothing in the record to suggest the trial court based its decision on anything other than the evidence presented; the trial court did not abuse its discretion when overruling Appellant's objection. Given the strength of the State's case, the prosecutor's closing argument concerning a witness that was not called to the trial was not an abuse of discretion. Point IV is denied.

The judgment of conviction is affirmed.[6]

BURRELL, P.J., LYNCH, J., concur.

---

6. On appeal, Appellant filed a Motion to File Exhibits and Incorporate into Legal File and/or Appendix in an effort to put the Civil Case transcript and judgment before us; how-ever, said exhibits were not admitted at trial and are not properly before this Court on appeal. The motion is denied.